## COHEN v. RANDALL.

### No. 238.

Circuit Court of Appeals, Second Circuit.

July 20, 1943.

Gustave B. Garfield, of New York City (Davidson & Mann, Harvey T. Mann, and Maurice P. Davidson, all of New York City, on the brief), for appellant.

Robert D. Steefel, of New York City (Stroock & Stroock, of New York City, on the brief), for appellee.

Before SWAN, CLARK, and FRANK, Circuit Judges.

442

CLARK, Circuit Judge.

This appeal reasserts the sufficiency of plaintiff's complaint, which was dismissed below on motion before answer for failure to state a claim against defendant upon which relief could be granted. Federal jurisdiction rests on diversity of citizenship, the plaintiff being a resident of California. She was formerly the wife of Nathan D. Cohen, of the City of New York, who died testate in 1940. On June 17, 1940, letters testamentary were issued by the Surrogate's Court of New York County to Lewis Randall as executor of Cohen's estate. This action against the executor was commenced in the district court in December, 1941.

The complaint sets out with unnecessary prolixity a story of domestic infelicity which terminated in a separation agreement followed by a Nevada divorce obtained by the plaintiff. She was married to Nathan D. Cohen in October, 1933. He was a resident of New York and remained such until his death. Five months after the marriage, charging desertion, she brought an action against him for a separation and for separate maintenance. A reconciliation was effected and this action was discontinued, but a few months later he again deserted her and she brought a second action of the same character in which she obtained an order for alimony pendente lite of $50 per week. While this action and two others [1] were pending, the parties made a separation agreement dated April 16, 1935. This is incorporated into the complaint. It provided that the husband and wife should continue to live apart, that her three pending actions should be discontinued without costs, that each released all rights in the other's estate, including election, intestate share, and dower, and that he should pay her $32,500 in full satisfaction of all claims for support and of a share in his estate. Of this sum she received $17,000 in cash without limitation as to its use. The remaining $15,500 she was required to deposit with a bank under an agreement providing that it should be paid to her in quarterly installments of $250, beginning July 15, 1935, but any remaining balance should be paid to her forthwith if the husband should die or if either husband or wife should obtain a decree of divorce issued by a court of any state of the United States.[2] In order to get possession of this sum of $15,500, the wife proceeded to Nevada and obtained a decree of divorce in the courts of that state.[3] Both the agreement and the divorce would preclude her from exercising the right she would have had as her husband's widow to elect under section 18 of the Decedent Estate Law of New York, Consol. Laws, c. 13, to take one-third of his estate.

In addition to the foregoing facts the complaint alleged that the husband induced the wife to enter into their separation agreement by means of false and fraudulent representations as to the property he owned, thereby causing her to believe that he was worth $85,000 less than was in fact the case; that she did not learn of the falsity of his representations until after his death; and that had she known the facts when she signed the separation agreement, she would not have accepted its terms or obtained the Nevada divorce. The theory of the plaintiff's cause of action is that the husband's fraud caused her to get her divorce whereby she lost her right to elect to take a share of his estate upon his death and thus sustained the loss for which she asks damages. Although the allegations that his misrepresentations caused her to get the divorce are not entirely definite and unambiguous, we shall assume that the complaint adequately asserts this essential fact. The complaint also alleged that the Nevada divorce is invalid because "the purported residence established by plaintiff" "was purely for the purpose of obtaining a decree of divorce pursuant to the scheme and device of Nathan D. Cohen evidenced by" the separation agreement. It demands $100,000 damages.

■ Much of the plaintiff's argument has been addressed to establishing the proposition that the separation agreement was null and void because in derogation of section 51 of the Domestic Relations Law

---

[1] One to set aside transfers of property alleged to be in fraud of her matrimonial rights, the other to obtain reimbursement for sums expended by her for her support before she had obtained the order for temporary alimony above mentioned.

[2] In the event of the wife's death any remaining balance was to be paid forthwith to her legal representatives.

[3] Defendant's brief states that the decree of divorce was granted June 6, 1935, on the ground of cruelty. But neither the date of the decree nor the ground on which it was granted is alleged in the complaint.

of New York, Consol. Laws, c. 14.[4] Since the parties were already living separate and apart it is by no means clear, laying aside the question of fraud in its inception, that the agreement was not valid and enforceable. See In re Rhinelander's Estate, 290 N.Y. 31, 47 N.E.2d 681. This, however, is an issue which may be passed without decision. Indeed, it is not perceived why her case would not be at least as strong if it were founded on fraud inducing her to make an otherwise valid agreement. But even if the separation agreement were to be held void, or if, otherwise valid, it were to be rescinded on the ground of fraud, plaintiff would still have to face her Nevada divorce. Section 18(3) of the Decedent Estate Law, after providing that the right of election shall not be available to a spouse against whom or in whose favor a divorce or separation decree recognized as valid by the law of the state has been rendered, continues: "Nor shall such right of election be available to a spouse who has procured without the state of New York a final decree or judgment dissolving the marriage with the testator where such a decree or judgment is not recognized as valid by the law of this state."[5] Defendant's substantial point is that in any event the divorce decree standing unvacated prevents her election of an interest in her husband's estate, and that hence his alleged fraud, as matters stand, has caused her no legal damage. The issue, however, must be broadened to include the question whether the divorce decree can be here attacked, since, the plaintiff having stated her facts extensively and the defendant having appeared, the court must now give her whatever relief the facts justify without respect to her formal demand. Federal Rules of Civil Procedure, rule 54(c), 28 U.S.C.A. following section 723c. In any event, we are brought to the fundamental question how far one situated as the plaintiff asserts herself to be would be permitted to challenge the Nevada decree in the courts of New York.

 Under the New York precedents which must control us, that question cannot be considered entirely free from doubt.

In the circumstances plaintiff may not have been wise in suing in the federal courts, which are now inhibited in this class of cases from doing anything beyond merely reflecting state pronouncements, with eyes closed to policy arguments or changing trends. But she has made her choice of forum, and we are therefore compelled to interpret the New York precedents as best we may. Initially we may say that we do not think it adequate to dispose of this case as merely a forbidden collateral attack upon a foreign divorce decree. For first, New York does allow a wide attack in her courts on such foreign decrees even by persons who have secured them; and second, plaintiff attempts to bring herself within the rules—supplementary to those against collateral attack on judgments—of equitable relief for and estoppel against fraud "extrinsic" to the matter adjudicated in the judgment itself, rules which are applicable with respect to judgments in general, United States v. Throckmorton, 98 U.S. 61, 25 L.Ed. 93; 31 Am.Jur. 230–232, and decrees of divorce in particular. Restatement, Judgments, § 114, comment b; 27 C.J.S., Divorce, § 169, pp. 810–812, § 337, pp. 1304–1306; and cases hereinafter cited. The provision quoted above from the Decedent Estate Law § 18(3) cannot be considered as finally settling the matter, for that provision, enacted in 1929, in this respect simply adopts the law of Starbuck v. Starbuck, 173 N.Y. 503, 66 N.E. 193, 93 Am.St.Rep. 631, and other cases denying relief (in that case dower) to a woman who had herself procured a foreign divorce.[6] In fact, it is a fairly general rule, as the cases collected in 3 A.L.R. 535 show, that a party obtaining a judgment cannot collaterally attack it. That is, notwithstanding this general rule, of which the statute is a reflection, the two propositions above stated still are true and hence require our attention.

 First, it now seems finally settled in New York that either party to a foreign divorce decree may attack it as void in an action to settle matrimonial status. Querze v. Querze, 290 N.Y. 13, 47 N.E.2d 423, 424.[7] The court there distinguished other cases, such as Starbuck v. Starbuck,

---

[4] Sec. 51 provides that "a husband and wife cannot contract to alter or dissolve the marriage or to relieve the husband from his liability to support his wife."

[5] Subd. 9 of that section provides for waiver of the right of election by agreement or other duly executed instrument.

[6] See the Report of the Decedent Estate Commission, 13 McKinney's Consol. Laws of New York 101, citing Starbuck v. Starbuck, supra.

[7] Reversing 176 Misc. 446, 26 N.Y.S.2d 8, affirmed 263 App.Div. 797, 32 N.Y.S.2d 126, and relying on Stevens v.

supra, where the moving party was later held estopped to attack the divorce, as cases of "private claim or demand arising out of the marriage," as distinguished from "a full adjudication" of "the existing marital status." It is argued here that this must necessarily be considered an action for a private claim, not one for such a full adjudication as is meant in the Querze case. But as we have seen, the mere form of pleading is not decisive and the only compelling reason must be the death of the husband. The general rule appears to be, however, that relief may still be accorded notwithstanding the death of a spouse, Dennis v. Harris, 179 Iowa 121, 153 N.W. 343, and cases collected in 57 L.R.A. 583, 44 L.R.A.,N.S., 505, 125 Am. St.Rep. 230, 27 C.J.S., Divorce, §§ 171, 172, pp. 815, 819, and there are explicit dicta in several lower New York cases that relief by action in equity is still available. Morey v. Morey, 164 Misc. 527, 299 N.Y.S. 161, 163; Groh v. Groh, 35 Misc. 354, 71 N.Y.S. 985; and Watson v. Watson, 1 Hun, N.Y., 267.[8] In the absence of a definitive statement from the Court of Appeals,[9] the question cannot be regarded as conclusively settled; but on the available evidence, we do not feel justified in holding that death bars all relief in the premises.[10]

In this connection defendant cites certain cases in the lower courts denying relief for damages for fraud in procuring a judg-ment until the judgment is set aside. In certain cases at least, this is but a question of pleading. The point is well illustrated by one non-divorce case relied upon, Scopano v. United States Gypsum Co., 166 Misc. 805, 3 N.Y.S.2d 300, where, although the complaint was held insufficient, it was pointed out that if it had sought the setting aside of the former judgment it would have been proper as seeking equitable relief, and that then the plaintiff could well plead in the same action a claim for damages for the fraud. Ross v. Fida, 265 App. Div. 586, 40 N.Y.S.2d 865, appears to be similar.[11] But it is well understood that modern federal practice does not require so strict a theory of action as does New York practice; and here, even if an amendment was thought necessary—though an additional demand for judgment would not be required under F. R. C. P. 54(c), supra —judgment should not be entered against plaintiff, because she claimed only damages. Downey v. Palmer, 2 Cir., 114 F.2d 116; Rossiter v. Vogel, 2 Cir., 134 F.2d 908; 1 Moore's Federal Practice 106, 146, 556. The same comment may apply to two other cases involving divorce decrees, though here there are other differences, notably that the actions were directed against persons not parties to the decree and thus raise issues not germane to our present problem. Mahler v. Mahler, 173 Misc. 214, 17 N.Y.S.2d 502; Boylan v. Vogel, 240

---

Stevens, 273 N.Y. 157, 7 N.E.2d 26, 109 A.L.R. 1016, and Vose v. Vose, 280 N.Y. 779, 21 N.E.2d 616, and distinguishing Krause v. Krause, 282 N.Y. 355, 26 N.E. 2d 290, where a divided court refused to allow a husband, defendant in a separation action, to say the marriage was invalid because his previous Nevada divorce, procured by him against another woman, was void. Cases such as Mintz v. Mintz, Sup., 34 N.Y.S.2d 242, and Hunter v. Hunter, Sup., 24 N.Y.S.2d 76, decided in reliance on the Krause case, would seem no longer valid.

[8] The divorce action itself abates upon the defendant's death. Hunt v. Hunt, 75 Misc. 209, 135 N.Y.S. 39; Id., 154 App. Div. 833, 139 N.Y.S. 413; In re Crandall's Estate, 196 N.Y. 127, 89 N.E. 578, 134 Am.St.Rep. 830, 17 Ann.Cas. 874.

[9] In Krause v. Krause, supra note 7, the dissenting judges asserted that the husband should be allowed to attack the divorce there because of the public interest, the public in effect being a third party in all litigation affecting matrimonial status. The majority did not take this view, nor did they in terms repudiate it. And the public interest can be thought still involved though a spouse has died.

[10] Defendant also asserts that the claim here was one which would not survive before the broadening of Decedent Estate Law, § 118, applying to claims arising after September 1, 1935. Here the claimed fraud was alleged to have been discovered long thereafter; but it would seem that in any event it could be considered within the words "wrongs done to the property, rights or interests of another" of the former Decedent Estate Law § 120, as amended by Laws 1932, c. 458. Cf. Newman v. Dore, 275 N.Y. 371, 9 N.E.2d 966, 112 A.L.R. 643; Kirsner v. Kirsner, 257 App.Div. 840, 11 N.Y.S.2d 993.

[11] There were other issues in the case: insufficiency of allegation of fraud generally, a decree probating a will, and, as Harris, J. (the justice who decided the Scopano case) pointed out in dissenting, perhaps only fraud in the compromise of a right of action.

App.Div. 756, 265 N.Y.S. 990, reversing 147 Misc. 554, 264 N.Y.S. 209.[12] At best, there is a question how far these cases can be taken as authoritative in view of the recent reversals of lower court decisions by the Court of Appeals.[13] Thus more closely in point with our case would be a case such as Nathan v. Nathan, 150 Misc. 895, 270 N.Y.S. 551, affirmed without opinion 246 App.Div. 604, 284 N.Y.S. 976, where relief for the husband's fraud, even though sought in an action involving matrimonial status, could be obtained only in the state granting the divorce; but other cases even then were contra, McDermott v. McDermott, 252 App.Div. 875, 299 N.Y. S. 956, and the point is now settled otherwise by the recent cases in the Court of Appeals.

Nevertheless, it seems to us that the fraud here asserted is probably not such as to justify the full challenge of the foreign decree allowed by the recent New York cases. This is not the case of a completely void divorce, such as the Mexican decree in the Querze case; nor does it appear to be one without proper service, as in the Stevens case. The invalidity asserted is that plaintiff's purported residence in Nevada was purely for the purpose of obtaining the divorce. This means that she must have falsified her testimony as to residence. In general, perjured testimony as to a fact directly in issue does not appear sufficient as a sole ground of relief. Zeitlin v. Zeitlin, 202 Mass. 205, 88 N.E. 762, 23 L.R.A.,N.S., 569, 132 Am.St.Rep. 490; Chamblin v. Chamblin, 55 Nev. 146, 27 P.2d 1061; Clark v. Clark, 64 Mont. 386, 210 P. 93; Broduer v. Broduer, 53 R.I. 450, 167 A. 104; Restatement, Judgments, § 126(2) (b); 27 C.J.S., Divorce, § 169, p. 811. Of course, the situation might be otherwise if by false affidavits or otherwise she had prevented her husband from contesting this issue, Carey v. Carey, 121 Pa. Super. 251, 183 A. 371; but this can hardly be the situation where she is securing the divorce, as she alleges, "pursuant to the scheme and device" of her husband. We conclude, therefore, that, unless the husband's asserted fraud aids her, she is not within the rule of the Querze and Stevens cases.

Second, though a husband's fraud may undoubtedly justify relief to an injured and innocent wife, yet where she has procured the divorce, the cases seem to require more than mere fraud; while there are often present misrepresentations as to property and investments, the decisions speak more of coercion or duress or intimidation, such as to make the action really that of the husband, not of the wife. Burton v. Burton, 176 Okl. 494, 56 P.2d 385, 104 A.L.R. 728, with annotation at 735 stressing this point; Hall v. Hall, 70 Mont. 460, 226 P. 469; Hopkins v. Hopkins, 174 Miss. 643, 165 So. 414; Lake v. Lake, 124 App.Div. 89, 108 N.Y.S. 964; Dennis v. Harris, supra. In Re Brigham, 176 Mass. 223, 57 N.E. 328, Holmes, C.J., stressed that there must be a showing of real duress, and an absence of laches in seeking relief, particularly after the husband's death. And although in Graham v. Graham, 54 Wash. 70, 102 P. 891, L.R.A. 1917B, 405, 18 Ann. Cas. 999, the court had found a sufficient showing, yet in Robinson v. Robinson, 77 Wash. 663, 138 P. 288, 51 L.R.A.,N.S., 534, the earlier case was distinguished and duress was not found. True, in the present case plaintiff may base her claim on fraud in the earlier separation agreement and rely on estoppel against the husband to repel the bar of the divorce decree as a defense. But whether she uses her claim as a shield or a sword, there seems no particular reason why the rule should be different; and even when the rule is formulated in terms of "estoppel" to assert the invalidity of the divorce decree, it is stated in terms of "duress" and "compulsion" where the wife has procured the decree. Lippincott v. Lippincott, 141 Neb. 186, 3 N.W.2d 207, 140 A.L.R. 901, with annotation at 914, supplementing 122 A.L.R. 1321 and 109 A.L.R. 1018; Hopkins v. Hopkins, supra; Hollingshead v. Hollingshead, 91 N.J.Eq. 261, 110 A. 19.

In the present case the fraud alleged does not rise to the level of coercion or duress. It is at most a concealed transfer to his daughter and son-in-law of

---

[12] The first action was for damages against the husband and his mother, but the husband was not served. The second action was against the wife, with a claim for damages against the man she later married; it is this latter claim which the Appellate Division orders dismissed. Query whether an action against third persons is within this principle. It should be noted, further, that the fraud in each case was as to matters settled in the divorce decree and appears, therefore, to have been only intrinsic on the principles referred to below.

[13] See note 7, supra.

property, said to be worth $85,000, in which plaintiff could have a one-third interest if she succeeded in having it set aside. Moreover, in one of the several suits which was compromised and settled by the separation agreement she had attempted to set aside transfers to these very persons. Even if these were different transfers—a fact not made overclear—a seven years' delay in acting against people she had already suspected appears not to be that absence of laches looked for by Holmes, C. J., in Re Brigham, supra. Of course, decision on the facts, rather than on the pleadings, is ordinarily a safer course on issues of this kind; but there is no reason to suppose that plaintiff has not stated her strongest case (she sought no privilege of amendment below) or to think that plaintiff can prove a case within the authorities cited.

We conclude, therefore, that plaintiff has not stated a case permitting her to challenge the Nevada decree she procured, or one showing fraud or duress of the character which would entitle her to special equitable relief under the circumstances.

Affirmed.