Doris W. Cox THROWER, Plaintiff,

v.

Herman E. COX, Defendant.

Civ. A. No. 75–1576.

United States District Court,
D. South Carolina,
Greenville Division.

Dec. 21, 1976.

Christ Christ, Spartanburg, S. C., for plaintiff.

Herman E. Cox, pro se, of McDonald, Cox & Anderson, with C. Ben Bowen of Abrams, Bowen, Hagins & Robertson, Greenville, S. C., for defendant.

## ORDER ON PLAINTIFF'S MOTION TO AMEND COMPLAINT AND ORDER OF DISMISSAL

HEMPHILL, District Judge.

This action arises directly from a prior divorce proceeding between the parties which terminated in a decree of divorce of August 15, 1973 issued by the Honorable James A. K. Roper, Judge of the Greenville County Family Court. Subsequent to this divorce, Mrs. Cox (now Thrower) moved to North Carolina and remarried. She now claims diversity of citizenship as a basis for federal court jurisdiction to attack the validity of that part of her divorce decree entitled, "Property Settlement Agreement". The court is asked to decide essentially two questions: (1) whether a "domestic relations exception" exists to the federal diversity jurisdiction established in 28 U.S.C. § 1332 and, if so, (2) do the facts of this case justify characterizing it as a domestic relations case within that exception.

The complaint initially alleged that at the time the plaintiff consented to the "Property Settlement Agreement" she was mentally incompetent, under emotional duress, without assistance of counsel and ignorant as to the extent of the property involved.[1] As a result of these alleged factors, she prayed that the agreement be declared null and void, that the court declare the property held in constructive trust for the benefit of the plaintiff, that the court require an accounting and a redivision of the marital property, and that damages and other relief be awarded. The case was entertained in this court through the initial period of discovery and, after various motions, was set for pretrial on December 7, 1976. Prior to the pretrial, the plaintiff served a notice of motion requesting leave to amend the complaint and to allow additional discovery. The plaintiff wished to amend the complaint to add allegations of the defendant's adultery at the time of the prior action and to request a grant of alimony from the court. The discovery motion involved information concerning the defendant's alleged adultery.

The relevancy of the proposed amendments lay in the common law domestic relations defense of recrimination.[2] Simply stated, under the defense of recrimination, if a husband and wife are both guilty of grounds for divorce (in this case, adultery) neither would be entitled to a divorce, in what is essentially an application of the equitable doctrine of "clean hands". The divorce which is the subject of the present action was granted to the defendant on the grounds of the plaintiff's adultery and, in South Carolina, an adulteress may not receive alimony. South Carolina Code Annotated § 20–113. The plaintiff's contention was that the defendant's adultery at the time of the divorce would be a defense to the statutory bar to alimony. Although, from our brief excursion into the field of domestic relations, it appears that this contention is questionable, it is unnecessary to reach the merits of any such claim as the court is of the opinion that the action should be dismissed for lack of subject matter jurisdiction.

Although 28 U.S.C. § 1332 purports to grant jurisdiction to the district court in all cases involving diversity of citizenship and the requisite jurisdictional amount, it has long been recognized that cases in the field of domestic relations are an exception. *Barber v. Barber,* 21 How. 582, 16 L.Ed. 226 (1859); *Simms v. Simms,* 175 U.S. 162, 20 S.Ct. 58, 44 L.Ed. 115 (1899); *De la Rama v. De la Rama,* 201 U.S. 303, 26 S.Ct. 485, 50 L.Ed. 765 (1905). *See also; State of Ohio ex rel. Popovici v. Agler,* 280 U.S. 379, 50 S.Ct. 154, 74 L.Ed. 489 (1930). The proposition

---

1. It should be noted at this juncture that the plaintiff has failed to pursue any state court remedies in this regard.

2. Although the South Carolina Supreme Court has never had the opportunity to formally adopt this doctrine in the brief history of its divorce statute (since 1949), it has been recog-nized and commented on with favor. *Jeffords v. Jeffords,* 216 S.C. 451, 58 S.E.2d 731 (1950). It is an almost universally accepted principle of domestic relations law.

originally arose in *dicta* in *Barber v. Barber, supra,* and was recognized and discussed as follows in *Simms v. Simms, supra* :

> In support of the motion to dismiss this appeal because the decree below concerned divorce and alimony only, the appellee relied on *Barber v. Barber,* 21 How. 582, 16 L.Ed. 226. In that case, a majority of this court held that a wife who had obtained against her husband, in the courts of the state of their domicile, a decree divorcing them from bed and board and awarding alimony to her, might sue the husband for such alimony and a circuit court of the United States held that in a state in which he had since become domicile. Mr. Justice Wayne, in delivering judgment, said: "We disclaim altogether any jurisdiction in the courts of the United States upon the subject of divorce, or for the allowance of alimony, either as in original proceeding in chancery or as an incident to divorce of *vinculo, or* to one from bed and board." . .
> And from that proposition there was no dissent. It may therefore be assumed as indubitable that the Circuit Courts of the United States have no jurisdiction, either of suits for divorce, or claims for alimony, whether made in a suit for divorce, or by an original proceeding in equity, before a decree for such alimony in a state court. Within the states of the Union, the whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the state, and not to the laws of the United States. (Citing cases 175 U.S. at 167, 20 S.Ct. at 60, 45 L.Ed. at 117.)

Even though the origins of this doctrine apparently were *dicta,* the lower courts have adopted and applied it and it was finally recognized directly in the *State of Ohio ex rel. Popovici v. Agler, supra.* In that case the Supreme Court was not faced with a diversity question, but rather a question of whether a consul of a foreign country could be sued in state court for divorce. *Popovici,* a Rumanian Counsul, pled Article III, Section 2 of the United States Constitution and related statutes in asserting that the state courts lack jurisdiction. The court held that the state court did indeed have jurisdiction because

> The statutes do not purport to exclude the State Courts from jurisdiction except where they grant it to the Courts of the United States. Therefore, they did not effect the present case if it be true as has been unquestioned for three quarters of a century that the Courts of the United States have no jurisdiction over divorce. If when the Constitution was adopted the common understanding was that the domestic relations of husband and wife and parent and child were matters reserved to the States, there is no difficulty in construing the instrument accordingly, and not much in dealing with the statutes. "Suits against consuls and vice consuls" must be taken to refer to ordinary civil proceedings and not to include what formerly would have belonged to the ecclesiastical Courts. 280 U.S. at 383, 50 S.Ct. at 155, 74 L.Ed. at 498.

Whereas the prior cases referring to a domestic relations exception to federal court jurisdiction may have been *dicta,* this position was the express holding in the *Popovici* case. It not only recognizes an exception in the area of diversity jurisdiction but completely renounces *any* federal jurisdiction whatsoever in the fields of domestic relations.[3] and consigns jurisdiction in that area of the law exclusively to the states. *Zimmermann v. Zimmermann,* 395 F.Supp. 719 (E.D.Pa.1975); *Solomon v. Solomon,* 516 F.2d 1018 (3rd Cir. 1975); *Applegate v. Applegate,* 39 F.Supp. 887 (E.D.Va.1941); *Calhoun v. Lange,* 40 F.Supp. 264, (D.C.Md. 1941); *Sutton v. Leib,* 91 F.Supp. 937 (S.D. Ill.1950), *affirmed* 188 F.2d 766, *reversed* on other grounds 342 U.S. 402, 72 S.Ct. 398, 96 L.Ed. 448, *rehearing denied* 343 U.S. 921, 72 S.Ct. 674, 96 L.Ed. 1334, on remand 199

---

3. This prohibition of course does not include the District of Columbia or other such territories under the exclusive jurisdiction of the federal government, where there is no state law to provide an adequate forum.

F.2d 163, 33 A.L.R.2d 1451; *Manary v. Manary,* 151 F.Supp. 446 (N.D.Calif.1957); *Druen v. Druen,* 247 F.Supp. 754 (D.Colo. 1965). The most thorough exposition of the entire doctrine, its history and its purpose may be found in the case of *Solomon v. Solomon, supra,* at 1021. But for the length of this passage the court would be persuaded to quote it in full.

■ Where the previous discussions of this doctrine may have been *dicta* the Supreme Court in *Popovici* held that the general grants of jurisdiction to the federal courts found in the Constitution and the statutes of the United States were never meant to include domestic relations matters. This has a sound historical basis, as prior to the enactment of divorce statutes by the several states, divorce had traditionally been either an ecclesiastical or a legislative matter. Today there are additional policy reasons for the federal courts to leave domestic relations law to the state whenever possible. Domestic relations matters, such as divorce and child custody, are very common types of litigation which, even with the diversity requirements, would greatly increase the workload of an already overburdened court system. The nature of domestic relations law is such that this is not merely a recapitulation of the old "flood gates" argument. In granting alimony and deciding matters of child custody, the court must retain jurisdiction and frequently reconsider the case to determine if changed circumstances warrant a change in the original decree. This requires constant supervision of the court. Additionally, in order to perform the job adequately, state family courts out of necessity frequently work in close conjunction with social welfare agencies which assist them in carrying out their functions. Such assistance is not presently available in the federal system, nor do we need to create an additional bureaucracy to needlessly duplicate these state services. Perhaps the most convincing evidence that the federal courts should refuse jurisdiction in this area is the state's own treatment of this type of litigation. The field of domestic relations is so vexatious, time-consuming and specialized that virtually every state in the Union has established a separate system of family courts to prevent their own trial courts from being overburdened. As it has done consistently in the past, the federal court system should allow them that dubious honor exclusively.

■ It has quite uniformly been held, however, that liquidated obligations arising from domestic relations suits, such as accrued alimony or property settlements, may be enforced in the district courts if diversity of citizenship and the jurisdictional amount exists. *Manary v. Manary, supra; Sutton v. Leib, supra; Calhoun v. Lange, supra.* In some cases it has been necessary to determine the validity of a divorce decree and some federal courts have delved extensively into what is essentially the merits of the prior suit without directly addressing the question of whether or not an action was in fact a domestic relations suit being presented in federal court in another form. *Cohen v. Randall,* 137 F.2d 441 (2nd Cir.) *cert. denied,* 320 U.S. 796, 64 S.Ct. 263, 88 L.Ed. 480 (1943); *Holm v. Shilensky,* 388 F.2d 54 (2nd Cir. 1968); *Block v. Block,* 196 F.2d 930 (7th Cir. 1952); *Schoonover v. Schoonover,* 172 F.2d 526 (10th Cir. 1949).

■ In the present case the plaintiff alleges that a complaint sounds in contract and fraud, and that her request for alimony should be granted as relief incidental to damages in the contract action. Aside from challenging the validity of the "domestic relations exception", the plaintiff contends that even if the "exception" does exist, her case does not fall within it. The court disagrees and feels strongly that the plaintiff's characterization of her complaint is highly artificial and disregards the true nature of both the underlying causes of action and the type of relief sought. Determining the nature of this lawsuit requires a consideration of its substance rather than its form. As in other characterization processes, the court must consider not merely the form of the complaint but the basic nature of the claims or issues presented and the type relief sought from the court.

**574**

In the complaint, and its proposed amendment, the plaintiff has pled, wishes to raise, and the greater portion of the case would be occupied by, the issues of adultery and recrimination, which can hardly be characterized as contractual causes of action and defenses. The relief sought is primarily a new division of the marital property and a grant of alimony which are, to say the least, new and unusual types of contract damages. In order for this court to determine if alimony is appropriate it will be necessary to essentially try the prior case de novo. Even if the court would not be required under the *Erie* doctrine to consider South Carolina statutory and case law to determine that grounds for divorce existed in the first place, it would be required to hear the same sordid evidence concerning adultery as a possible bar to alimony and adultery on behalf of the defendant on the issue of recrimination. In other words, the plaintiff, under the guise of a contract action, wishes us to relitigate, set aside, and fashion new relief before every aspect of the prior divorce proceeding except the prior court's dissolution of the marital status of the parties. For this reason, in addition to finding a lack of federal jurisdiction in the area of domestic relations, the court finds that the nature of the issues presented and relief sought in the present action is so completely permeated with domestic relations law that it can only be rationally and logically characterized as an action arising from that field.

Accordingly, the court feels compelled to dismiss the present action without prejudice for lack of subject matter jurisdiction.

AND IT IS SO ORDERED.