477 F.Supp. 742 (1979)
ANHEUSER-BUSCH, INC., Plaintiff,
v.
LOCAL UNION NO. 133, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, et al., Defendant.
No. 79-1083-C(3).
United States District Court, E. D. Missouri, E. D.
October 12, 1979.
*743 Dennis C. Donnelly, Bryan, Cave, McPheeters & McRoberts, St. Louis, Mo., for plaintiff.
Jerome J. Duff, St. Louis, Mo., for defendant.

MEMORANDUM
FILIPPINE, District Judge.
In this action under Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, the plaintiff seeks a Boys Markets injunction[1] and an order compelling the defendants to submit various disputes to arbitration. A hearing was held on September 10, 1979, on plaintiff's motion for a preliminary injunction. The parties having now stipulated that, in the event the motion for the preliminary injunction is granted, they will present no further evidence in support of or opposition to the request for a permanent injunction, the Court makes its findings of fact, conclusions of law and ruling considering the plaintiff's motion for a preliminary injunction and complaint seeking a permanent injunction.
Plaintiff (the "Company") is a corporation organized and existing under the laws of the State of Missouri, and has its principal place of business at 721 Pestalozzi Street, St. Louis, Missouri. Plaintiff is an employer engaged in an industry affecting commerce within the meaning of 29 U.S.C. § 152(2) and (7).
Defendants, Local Union 133 (Inter-Plant Drivers), the International Brotherhood of Teamsters; and the Brewery and Soft Drink Workers Conference-USA and Canada, International Brotherhood of Teamsters (hereinafter collectively referred to as the "Union") are unincorporated labor organizations representing employees in an industry affecting commerce within the meaning of 29 U.S.C. § 152(2) and (7). Local 133 maintains its principal office within the Eastern District of Missouri, Eastern Division and the Brewery Conference maintains its principal office in Chicago, Illinois.
The parties have stipulated to the following facts:
1. Duly authorized officers and agents of defendant Union are engaged in representing or acting for employee members within the Eastern District of Missouri. The members of defendant Union are too numerous to be joined herein individually as defendants, but said members are adequately represented by defendants, John J. Girard, Charles Kelting, Charles Talkington, Richard Crews, Melvin McLaughlin, Donald Woodson, Ronald Woodson, Ben Lonigro, Marty Templin, Barry Sharp, Gary Ball, Larry Declue, Frank Ladish, John Longo and Gregory Francis, all of whom are members of defendant Union, and each of whom has been joined as a party defendant in his individual capacity and as a representative of a class consisting of members of defendant Union.
*744 2. Plaintiff and defendant Union are parties to a labor contract (the "Contract").[2]
3. Defendant Union represents certain employees of plaintiff at plaintiff's St. Louis, Missouri facility.
4. All of the acts referred to herein transpired within the Eastern District of Missouri.
5. On two occasions the parties have arbitrated disputes over work assignments which were claimed by the Union under Article XIX of the Contract. The first arbitration resulted in an award from Arbitrator Marshall Seidman dated July 19, 1979; the second resulted in an award by Arbitrator William Belshaw dated August 8, 1979.
*745 6. Subsequent to the issuance of the Seidman award the parties invited Arbitrator Seidman to convene a meeting in St. Louis to discuss the interpretation and application of his decision.[3]
7. The plaintiff Company and the Union have met on nearly a dozen occasions subsequent to the issuance of the Seidman award attempting to resolve their differences over its interpretation and application.
8. The parties disagree concerning the interpretation and application of the Seidman award, and the Union contends that the Company has failed and/or refused to implement it.
9. Defendant Union presently has certain disputes with plaintiff concerning various work assignments and concerning the interpretation and application of Article XIX of the Contract.[4] The parties agree that such disputes ordinarily are arbitrable pursuant to Article XV of the Contract. It is the position of the Union, however, that the parties' present disputes are not arbitrable because they are covered by the Seidman award. It is the position of the plaintiff Company, on the other hand, that the parties' present disputes are indeed arbitrable.
10. Plaintiff has both orally and in writing demanded that the Union arbitrate the disputes or differences which the Union now has over the interpretation and application of Article XIX.
11. On September 5, 1979 certain of the named defendants and other employee members of defendant Union engaged in a strike, work stoppage or refusal to work because plaintiff did not accede to the Union's position regarding the disputes referenced above. Commencing on the regularly scheduled shift at 6:00 a. m. on Wednesday, September 5, members of defendant Union refused to report for work and at 8:00 a. m. a large number of the members of defendant Union commenced a strike and work stoppage at plaintiff's St. Louis facility.
12. At approximately 9:00 a. m., September 5, 1979, plaintiff sought a Temporary Restraining Order to enjoin defendants from further engaging in any strike or work stoppage. At approximately 10:30 a. m. defendants entered into a stipulation that they would indeed refrain from their strike or work stoppage pending the Court's decision on plaintiff's Motion for a Preliminary Injunction.
13. But for the voluntary cessation of the defendants' strike or work stoppage plaintiff would have suffered irreparable harm.

CONCLUSIONS OF LAW
This Court has jurisdiction over this action pursuant to 29 U.S.C. § 185.
This action is governed by the Supreme Court's accommodation, in Boys Markets, supra, of the anti-injunction strictures of the Norris-LaGuardia Act, 29 U.S.C. § 104, to the provisions and policy of the Labor Management Relations Act, 29 U.S.C. § 141 et seq., favoring arbitration. The conditions required under Boys Markets for the issuance of an injunction in a labor dispute have been defined by the Eighth Circuit as the following:
when (1) the union is engaged in a strike or other violation of a "no strike" clause of a collective-bargaining agreement, if (2) the violation was precipitated by a dispute between the parties, which dispute is (3) subject to mandatory grievance *746 or arbitration procedures provided for in the agreement, and (4) issuance of the injunction is otherwise warranted under ordinary principles of equity.
National Rejectors Industries v. United Steel Workers, 562 F.2d 1069, 1075 (8th Cir. 1977), cert. denied 435 U.S. 923, 98 S.Ct. 1486, 55 L.Ed.2d 517 (1978).
The central issue in this action is the satisfaction of the third of these conditions. The parties' stipulations show that the Union was engaged in a strike which may be resumed and that the strike was precipitated by disputes over various work assignments and the application and interpretation of Article XIX. The stipulations also show that the plaintiff would suffer "irreparable harm" were the defendants to engage in a work stoppage; background for this stipulation was provided at the hearing by the testimony of R. Dennis Voisey, plaintiff's Manager of St. Louis Labor Relations.[5] Thus there appears to be no question that an injunction is warranted under Boys Markets if the underlying dispute is subject to the mandatory arbitration procedures of Article XV and the plaintiff has thus demonstrated that a strike by the Union in the present circumstances would violate the no-strike provisions of Article XV.[6]
The Union's basic position is that it is not bound by Article XV to arbitrate the present disputes because the work at issue has already been awarded to the Union by Arbitrator Seidman. The Union claims to have two options at this point: institution of a court action to enforce the Seidman award, or a strike. The Union admits that the purpose of its strike was to attempt to compel the plaintiff "to comply with the terms of the Seidman Award";[7] it claims that under the Contract, it has reserved the right to use economic power to enforce post-arbitration compliance with an award. The Union cites Buffalo Forge Co. v. Steelworkers Union, 428 U.S. 397, 96 S.Ct. 3141, 49 L.Ed.2d 1022 (1976), for the proposition that
If the Union reserves the right to resort to self-help at the conclusion of the arbitration process, that agreement must be respected. The court's power is limited by the contours of the agreement between the parties.
Id. at 425, 96 S.Ct. at 3156 (Stevens, J., dissenting).
Plaintiff maintains stoutly that it is in compliance with the Seidman award and contends that the defendants' proper and exclusive remedy for plaintiff's alleged failure to implement the award is an enforcement action. The plaintiff argues further that Section 3 of Article XV of the Contract permits resort to economic power only when neither party has demanded arbitration or when one party resists a demand for arbitration. Plaintiff's position is that this Court must determine from the Contract itself whether the current dispute over work assignments is subject to the mandatory arbitration provisions of Article XV.
Since the Steelworkers trilogy,[8] the courts have consistently held that, in actions to enforce mandatory arbitration provisions of a collective bargaining agreement, the arbitrability of a given dispute must be determined from the terms of the contract itself.
A grievance under a particular collective bargaining agreement is deemed arbitrable "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83 [80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409, 1417] (1960). *747 General Drivers v. Sears, Roebuck & Co., 535 F.2d 1072 (8th Cir. 1976). The Supreme Court applied this "presumption of arbitrability" in a Boys Markets action involving a safety dispute in Gateway Coal Company v. United Mine Workers, 414 U.S. 368, 94 S.Ct. 629, 38 L.Ed.2d 583 (1974). See United States Steel Corp. v. United Mine Workers, 519 F.2d 1236, 1243 (5th Cir. 1976). This approach provides an important complement to the Boys Markets analysis, further minimizing "the devastating implications for the enforceability of arbitration agreements and their accompanying no-strike obligations," 398 U.S. at 247, 90 S.Ct. at 1591, of the pre-Boys Markets situation.
In the instant case, the Union agrees that the disputes would ordinarily be subject to the Contract's mandatory arbitration clause. We find no exception in that clause for instances in which one party claims that a dispute has already been arbitrated, nor do we deem it appropriate to create such an exception in the Boys Markets scheme. The Union's position that it has the right to strike to enforce its interpretation of the Seidman award runs contrary to the national labor policy favoring peaceful methods of dispute resolution and, in a Boys Markets setting, to the presumption of arbitrability.
The Union has the option, which it recognizes, to institute an action under 29 U.S.C. § 185 to enforce the Seidman award. In such an action the Union could have presented the issues which they attempt to raise here. San Francisco Electrical Contractors Ass'n. v. IBEW Local 6, 577 F.2d 529 (9th Cir. 1978). To allow the Union to ignore its peaceful option while it seeks to enforce the award in the streets would in fact render the valuable arbitration process largely nugatory. A request for judicial enforcement may be viewed as the final step in the arbitration process. IBEW Local 6, supra; New Orleans Steamship Ass'n v. General Longshore Workers, 389 F.2d 369 (5th Cir. 1968).
In a situation analogous to that which obtains in the instant case, the Third Circuit, in Local 103, IUE v. RCA Corp., 516 F.2d 1336 (3d Cir. 1975), refused a Union's request that an employer be enjoined from proceeding with arbitration. A clause in the parties' collective bargaining agreement prohibited re-arbitration of "the same question" or issue, and the Union claimed that the dispute had already been arbitrated. The Court held that it was the arbitrator's function to determine whether the same question or issue had already been arbitrated, and the Court declined
to allocate this interpretive role to the [federal] courts . . . when the parties have agreed to submit all questions of interpretation to the arbitrator, the function of the court is to ascertain "whether the party seeking arbitration is making a claim which on its face is governed by the contract." United Steelworkers v. American Manufacturing Co., 363 U.S. 564, 568 [, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403] (1960).
516 F.2d at 1339.
The Union claims that, even assuming that an injunction is warranted under Boys Markets, this Court is precluded by 29 U.S.C. § 108 from granting injunctive relief to the Company because of the Company's failure to comply with its obligations under the Seidman award. The Company argues in response that compliance with the arbitration award is not an "obligation imposed by law" within the meaning of that section, and, moreover, that cognizance of such an issue in the circumstances of this case would be incompatible with the logic of Boys Markets.
Section 108 provides in part that:
[n]o restraining order or injunctive relief shall be granted to any complainant who has failed to comply with any obligation imposed by law which is involved in the labor dispute in question.
The defendants have cited no cases in which this section was held to preclude injunctive relief because of a complainant's failure to comply with a contractual obligation, and we have found none. The Congressional debates on the section, as discussed in Brotherhood of Railroad Trainmen v. Toledo, Peoria & Western Railroad, 321 U.S. 50, 64 S.Ct. 413, 88 L.Ed. 534 (1944), do not resolve the issue completely.
*748 However, the plaintiff argues, persuasively, that if, by virtue of § 108, injunctive relief were not available to enforce mandatory arbitration agreements and accompanying no-strike obligations until the courts had investigated every allegation of breach of the collective bargaining agreement, the courts would usurp the function of arbitrators. The courts would be required to determine either that the party seeking injunctive relief had violated the agreement, in which case the dispute could not be ordered to arbitration, or that the party seeking injunctive relief had not violated the agreement, in which case, with the issues thus prejudged, the dispute could be ordered to arbitration. That such judicial displacement of the arbitration process would be necessitated by the Union's position clearly militates against the tenability of that position. The Boys Markets decision itself noted § 108 only because it manifests the national policy favoring arbitration. 398 U.S. at 242, 90 S.Ct. 1583. The Supreme Court did not find it necessary to take further note of the section and this fact provides further support for the plaintiff's contention that an "obligation imposed by law" does not include a contractual obligation.
Having found that all of the specific requisites for a Boys Markets injunction are present in this case, and that a resumption of the strike by the Union would cause irreparable injury to the Company and would violate the no-strike clause of the Contract, the Court will issue the permanent injunction sought by the plaintiff and will also enter an order requiring the defendants to submit their disputes to arbitration.
NOTES
[1] Boys Markets, Inc. v. Retail Clerks Union, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970).
[2] The relevant provisions of the Contract took effect on November 29, 1978, and remain in effect until February 28, 1982.

Article XV of the Contract reads as follows:
GRIEVANCE AND ARBITRATION
Section 1. In the event of a dispute, difference or disagreement between the Employer and the Union concerning the interpretation or application of the terms of this Agreement, representatives of the Employer and the Union shall make an honest and sincere effort to adjust the same in an amicable manner. In the event, however, of the inability of the Company and the Union to reach an agreement on the issue or issues in dispute, the question may, at the option of either party, be submitted for arbitration in the following manner:
Section 2. Either party may demand arbitration and shall give five (5) days advance notice, in writing, to the other Party of its desire to arbitrate. The dispute shall be submitted to the Board of Arbitration of three (3) persons. One person shall be selected by the Union, one by the Employer, and the third by the first two. Designations of the persons selected by the Union and by the Employer must be made within ten (10) days after the demand for arbitration is made, and the two designees must select the third arbitrator within ten (10) days thereafter; provided, however, that in the event that the first two arbitrators cannot agree upon the selection of the third, then the third shall be appointed, upon request by either Party, by the then Presiding Judge of the St. Louis Court of Appeals.
Section 3. After the matter has been referred to arbitration, and while it is pending arbitration, there shall be neither strike nor lock-out; provided, however, that if neither party demands arbitration, or if, after arbitration is demanded, the other party fails or refuses to cooperate in prompt selection of, and submission of, the dispute to the Board of Arbitration, either party preserves the right to exercise its economic power in support of its demands, and any such actions shall not be a violation of this contract, notwithstanding any other provisions of this contract.
Section 4. The fee and expenses, if any, of the arbitrator selected by the Employer and one selected by the Union shall be paid by the Party making the selection. The fee and expenses, if any, of the third member of the Board of Arbitration as well as whatever other expenses are involved in the Arbitration hearing shall be shared equally by the Parties.
Although the Contract itself nowhere expressly provides that an arbitrator's decision is final and binding upon the parties, the parties have stipulated that "arbitration decisions rendered in accord with Article XV of the parties' Collective Bargaining Agreement [the Contract] are final and binding upon the parties. The parties have regularly conducted themselves in this fashion and as a matter of past practice have so regarded the decisions of arbitrators thus rendered." Supplemental Joint Stipulation.
Article XIX of the Contract reads in part as follows:
WORK DESCRIBED
Section 1. The work of truck drivers, chauffeurs and helpers shall consist of loading and unloading of all city delivery trucks and city delivery trailers (except as mutually agreed) and the delivery of beer and beverages to customer accounts in Greater St. Louis and Vicinity when such accounts are serviced directly by the Employers and not through beer wholesalers or distributors; the transportation to and from the premises of the Employer of starch, glucose, yeast, all syrup when delivered either by drums or tank trucks or tank trailers; rice, all by-products, rubbish, freight and all other commodities and merchandise, when such transportation is performed by employees of the Employer; the Union recognizes the unrestricted right of the Employers to contract for supplies and materials on a delivered basis; all warehousing off of Brewery premises, excluding warehousing as currently described in contracts recognized by the Employer; and all other work of similar occupation as directed by the Employer. L.C.L. freight handled by outside shippers is excepted from this Article. The Employers shall not hire independent contractors or outside persons, firms, or corporations to perform the work currently being performed by Employees covered by this Agreement without prior agreement with the Union.
[3] This supplemental hearing was held on August 11, 1979. The Company and the Union disagreed at this hearing whether Arbitrator Seidman still had jurisdiction over certain issues which were covered in the award, the Union claiming that he did have such jurisdiction, the Company claiming that he did not. Subsequent to the supplemental hearing, the parties settled several of the disputes which had prompted them to convene the hearing and the Union declined to press the remaining disputes with the Arbitrator because, in the words of Arbitrator Seidman in a confirmatory letter, the Union wished to seek "relief and/or enforcement of my award in another forum." Letter of Arbitrator Seidman to the Company and the Union, dated August 28, 1979.
[4] These disputes relate to the hauling of Chelsea Soda Beer, pressure switches and beer cans in the St. Louis area.
[5] Transcript at 32-34.
[6] Campbell "66" Express, Inc. v. Rundel, 597 F.2d 125 (8th Cir. 1979).
[7] Defendants' Proposed Findings of Fact, No. 11.
[8] United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).