**ZEIGLER COAL COMPANY,**
**Plaintiff-Appellant,**

v.

**LOCAL UNION NO. 1870, UNITED MINE WORKERS OF AMERICA and Local Union No. 8682, United Mine Workers of America, Defendants-Appellees.**

No. 76–2113.

United States Court of Appeals,
Seventh Circuit.

Argued June 7, 1977.
Decided Dec. 1, 1977.

Kenneth W. Blan, Jr., Danville, Ill., for plaintiff-appellant.

Thomas Gumbel, Edwardsville, Ill., for defendants-appellees.

Before BAUER and WOOD, Circuit Judges, and MARSHALL, District Judge.*

BAUER, Circuit Judge.

Zeigler Coal Company here appeals the district courts refusal to hold the United Mine Workers (UMW) locals in civil contempt for allegedly violating a prior order of the district court enjoining the locals from engaging in any work stoppages over disputes made subject to arbitration by the 1974 National Bituminous Coal Wage Agreement, to which both Zeigler and the UMW are signatories. Zeigler, alleging that the defendants were engaged in a wildcat strike over an arbitrable issue in violation of the injunction, sought both a civil contempt citation and damages. The defendants answered that they were engaged in a sympathy strike that was not over any underlying dispute with the company subject to arbitration and thus did not violate the district court's order. The district court agreed with the unions' position and denied plaintiff's motion on the authority of *Buffalo Forge Co. v. United Steelworkers of America*, 428 U.S. 397, 96 S.Ct. 3141, 49 L.Ed.2d 1022 (1976). For the reasons noted below, we affirm the district court's ruling.

## I.

The events giving rise to this action sprang from a local dispute at a Boone County, West Virginia mine, which prompted a wildcat strike by the mine workers there. The strike soon precipitated walkouts in seven States as other locals honored roving pickets set up by the West Virginia miners and others who had walked out in sympathy with them. The West Virginia strike had been in progress about three weeks when members of the locals involved here were confronted at the Zeigler mines by a picket line manned by persons claiming to be members of an unnamed Southern Illinois UMW local that had gone out in sympathy with the West Virginia miners. The locals honored the stranger pickets, and this action resulted.

Zeigler contends that, by honoring the stranger pickets, the locals violated the district court's order enjoining them from striking over arbitrable issues that had been issued under the authority of *Boys Markets, Inc. v. Retail Clerk's Union*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970). Relying on *Inland Steel Co. v. United Mine Workers of America*, 505 F.2d 293, 298–99 (7th Cir. 1974), Zeigler states that the locals' right to honor stranger pickets is an issue subject to arbitration under the governing collective bargaining agreement, which provides for arbitration of "any local trouble of any kind arising at the mine." Accordingly, Zeigler reasons, by honoring the stranger pickets the locals were striking over an arbitrable issue and thus had violated the district court's *Boys Markets* injunction.

The locals answer that their miners were not striking over any local issue subject to arbitration but engaging only in a sympathy strike. According to the locals, the Supreme Court's recent decision in *Buffalo Forge Co. v. United Steelworkers Union*, 428 U.S. 397, 407–08, 96 S.Ct. 3141, 49 L.Ed.2d 1022 (1976), requires us to overrule our prior decision in *Inland Steel* to the extent that the latter holds that *Boys Markets* authorizes issuance of an injunction against a sympathy strike pending arbitration of any dispute over the legality of the strike.

## II.

In *Inland Steel*, we held that a UMW strike resulting from the honoring of a

---

* The Hon. Prentice H. Marshall, United States District Court for the Northern District of Illinois, is sitting by designation.

stranger picket was enjoinable on the authority of *Boys Markets*. We reasoned that, because the National Bituminous Coal Wage Agreement of 1971 rendered the union's right to honor a stranger picket subject to arbitration, the union impliedly bound itself not to strike over that dispute. See *Gateway Coal Co. v. United Mine Workers*, 414 U.S. 368, 380–84, 94 S.Ct. 629, 38 L.Ed.2d 583 (1974). Accordingly, a *Boys Markets* injunction would issue to enforce the union's duty to arbitrate. See 505 F.2d at 299–300.

In a cogent dissent, Chief Judge Fairchild reasoned that, · because the union's strike was precipitated merely by the picketing of a third-party union rather than by any local grievance against the employer, the strike could not be said to be "over" any underlying arbitrable dispute between the parties. Thus, even if the right to honor stranger pickets was itself arbitrable, injunctive relief would be inappropriate as it would effectively constitute a prejudgment of the merits of the dispute the parties had agreed to submit to arbitration. To hold otherwise, said Judge Fairchild, "would be to permit the narrow exception created by *Boys Markets* to subsume the rule." 505 F.2d at 301.

In *Buffalo Forge*, the Supreme Court held that a sympathy strike allegedly violative of an express no-strike clause contained in the governing collective bargaining agreement was not subject to a *Boys Markets* injunction. Notwithstanding the conceded arbitrability of the question of whether the union's strike violated the no-strike agreement, the Court determined that the Norris-LaGuardia Act barred the preliminary injunctive relief sought by the employer. The *Boys Markets* rationale for issuance of an injunction was inapposite because

> "the strike was not *over* any dispute between the Union and the employer that was even remotely subject to the arbitration provisions of the contract. The strike at issue was a sympathy strike in support of sister unions·negotiating with the employer; neither its causes nor the

issue underlying it were subject to the settlement procedures provided by the contract between the employer and respondents. The strike had neither the purpose nor the effect of denying or evading an obligation to arbitrate or of depriving the employer of his bargain. Thus, had the contract not contained a no-strike clause or had the clause expressly excluded sympathy strikes, there would have been no possible basis for implying from the existence of an arbitration clause a promise not to strike that could have been violated by the sympathy strike in this case." 428 U.S. at 408, 96 S.Ct. at 3147 (emphasis in original).

Moreover, the Court noted, neither the fact that the strike allegedly violated the union's no-strike pledge, nor the fact that the parties' dispute over the legality of the strike was arbitrable, justified granting injunctive relief. The *Boys Markets* exception to the Norris-LaGuardia Act's anti-injunction policy, said the Court, had the limited purpose of enforcing agreements to arbitrate. That limited purpose would not be served by issuing an injunction for "the parties' agreement . . . to arbitrate their differences themselves would be eviscerated if the courts for all practical purposes were to try and decide contractual disputes at the preliminary injunction stage." 428 U.S. at 411–12, 96 S.Ct. at 3149.

We think it clear from the above that *Buffalo Forge* proscribes issuance of a *Boys Markets* injunction against a sympathy strike alleged to be in violation of an express or implied no-strike agreement pending arbitration of the parties' dispute over the legality of the strike. *Buffalo Forge* teaches that where a strike is not "over" any underlying dispute between the parties subject to arbitration but rather is itself the very subject of the parties' dispute, issuance of an injunction against the strike would constitute an unwarranted judicial intrusion into the merits of the controversy.

■ In light of that teaching, we believe that our prior decision in *Inland Steel* must

be reconsidered.[1]  As the Supreme Court noted in *Buffalo Forge*, "[t]o the extent that the Court[s] of Appeals . . . have assumed that a mandatory arbitration clause implies a duty not to engage in sympathy strikes, they are wrong." *Id.* at 408 n. 10, 96 S.Ct. at 3147.  In view thereof, we hereby overrule *Inland Steel* insofar as it holds that a *Boys Markets* injunction may issue against a sympathy strike pending arbitration of any dispute between the parties concerning the Union's right to engage in such a strike.**  Accord, *United States Steel Corp. v. United Mine Workers of America*, 548 F.2d 67 (3d Cir. 1977), overruling *Island Creek Coal Co. v. United Mine Workers of America*, 507 F.2d 650 (3d Cir. 1974).

## III.

Recognizing that we might find it necessary to overrule *Inland Steel* in light of *Buffalo Forge*, Zeigler seeks to distinguish the Supreme Court's decision from the case at hand.  The company claims that, unlike the strike at issue in *Buffalo Forge*, the defendants' strike was not a true "sympathy" strike but merely an extension of the illegal primary strike begun by their brother West Virginia local.  Zeigler notes that the *Buffalo Forge* strike was authorized by the international union, and that the striking workers had no direct or beneficial interest in the outcome of the dispute between the employer and the union whose picket lines precipitated their strike.  Here, in contrast, says Zeigler, the defendants had a direct contractual interest in the outcome of the underlying West Virginia dispute because they were bound by the same collective bargaining agreement as the West Virginia local.  Accordingly, Zeigler reasons, because the defendants stood to benefit from extending and supporting the illegal primary strike over an issue that all the UMW locals had agreed to submit to arbitration, their strike cannot be regarded as the type of disinterested "sympathy" strike protected by *Buffalo Forge*.

█ We would agree with Zeigler that, if the defendants' strike were simply an extension of the illegal West Virginia wildcat, this would be a paradigm case for a *Boys Markets* injunction.  There is nothing in the record before us, however, supportive of the company's contention that, by refusing to cross the stranger pickets, the defendants were adopting the grievances and goals of the West Virginia local as their own and thus striking "over" a matter subject to arbitration.  Like the Sixth Circuit in *Southern Ohio Coal Co. v. United Mine Workers of America*, 551 F.2d 695, 703–05 (6th Cir. 1977), we are unpersuaded that the mere fact that the defendants were bound by the same contract as their brother West Virginia miners means that they had any direct or beneficial interest in the outcome of the underlying dispute that precipitated the West Virginia strike.  The district court found that the defendants were engaged merely in a sympathy strike and not a strike over any local grievance with Zeigler that they were contractually bound to arbitrate.  The court's finding is amply supported by the record before us, and, for the reasons noted in *Southern Ohio Coal Co., supra*, neither the fact that the defendants were bound by the same contract as the West Virginia local nor the fact that the stranger picket may itself have been illegal give us cause for distinguishing *Buffalo Forge*.

We believe the district court correctly ruled that the defendants were not engaged in a strike "over" any dispute with Zeigler subject to binding arbitration.  Accordingly, they were not in violation of the district court's prior order.  The district court's judgment is therefore

AFFIRMED.

---

1.  Even before the Supreme Court decided *Buffalo Forge*, we had limited *Inland Steel* in *Hyster Co. v. Independent Towing & Lifting Mach. Ass'n*, 519 F.2d 89 (7th Cir. 1975), and *Gary Hobart Water Corp. v. NLRB*, 511 F.2d 284 (7th Cir. 1975).

** Pursuant to the provisions of Circuit Rule 16(e), the portions of this opinion relating to the conflict between *Inland Steel* and *Buffalo Forge* have been circulated among all judges in regular active service.  No judge favored a rehearing en banc with respect to the overruling of *Inland Steel*.