608 F.2d 767
 103 L.R.R.M. (BNA) 2064, 87 Lab.Cas. P 11,748
 DESIGN & MANUFACTURING CORPORATION, Plaintiff-Appellee,
v.
INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND
AGRICULTURAL IMPLEMENTWORKERS OF AMERICA (UAW),
and its Local 2042, et al.,
Defendants-Appellants.
 No. 78-2478.
 United States Court of Appeals,
Seventh Circuit.
 Argued June 11, 1979.
Decided Dec. 17, 1979.
 
 1
 Nora L. Macey, Indianapolis, Ind., for defendants-appellants.
 
 
 2
 David M. Mattingly, Michael H. Boldt, Indianapolis, Ind., for plaintiff-appellee.
 
 
 3
 Before CUMMINGS and TONE, Circuit Judges, and CAMPBELL, Senior District Judge.*
 
 
 4
 CAMPBELL, Senior District Judge.
 
 
 5
 Finding that a union's sympathy strike was over an issue subject to arbitration under the terms of the collective bargaining agreement between the parties, the district court refused to modify its previously entered preliminary injunction to allow the sympathy strike, and held the defendant union and several individuals in contempt of that injunction. Because we find that the only dispute between the parties related to the applicability of the no-strike clause of the collective bargaining agreement, Buffalo Forge Co. v. Steelworkers, 428 U.S. 397, 96 S.Ct. 3141, 49 L.Ed.2d 1022 (1976), requires us to reverse the order of the district court.
 
 
 6
 The relevant facts are not in dispute. Design & Manufacturing Corporation (D & M) manufactures automatic dishwashers at plants located in Richmond, Indiana, and in Connersville, Indiana. Its employees at the Richmond plant are represented by the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW), and its Local 2042 (Local 2042); the employees at the two Connersville plants are represented by separate units of Local 151 of the same International Union. The employees of D & M Richmond and the employees of D & M Connersville are covered by different collective bargaining agreements with different expiration dates.
 
 
 7
 The current collective bargaining agreement for the employees at the Richmond plant between D & M and Local 2042 became effective on February 28, 1978, and will not expire until 1980. The agreement contains a four-step grievance procedure ending in arbitration. The contract also contains the following no-strike clause:
 
 SECTION 10.0: STRIKES AND LOCKOUTS
 
 8
 Section 10.1. The Union agrees that it will not engage in, initiate, authorize, sanction or support any strike, slowdown, stoppage of work or other interference with production or the quality of the product during the life of this Agreement. The Company agrees that there shall be no lockouts during the life of this Agreement.
 
 
 9
 Section 10.2. In the event of a strike by the Union at either of the Company's plants in Connersville, Indiana, the Union will not strike or picket in any manner the Richmond plant, nor will employees in the Richmond unit support the strike in Connersville by any picketing, strike or work stoppage of any kind. However, this limitation shall not apply in the event that the Company brings any production from either of the Connersville plants to Richmond which would necessitate hiring new employees at the Richmond plant during a lawful strike at either of the Connersville plants. (App. 42)
 
 
 10
 In early September, 1978, Local 2042 struck the D & M plant at Richmond. D & M promptly instituted this action in the district court seeking injunctive relief. After a hearing, Judge Dillin found that the strike was over arbitrable grievances, enjoined the strike, and ordered the Local 2042 to utilize the grievance and arbitration procedures contained in the collective bargaining agreement. The preliminary injunction was entered on September 8, 1978, and the members of Local 2042 returned to work in compliance with the injunction.
 
 
 11
 The collective bargaining agreement between Local 151 and D & M covering the employees at D & M's Connersville plants expired on September 16, 1978. Thereafter, the Connersville employees went on strike. There is no question that the Local 151 strike at Connersville was a bona fide, legal, and primary strike against D & M.
 
 
 12
 On October 2, 1978, Local 2042 filed a motion to clarify the previously entered preliminary injunction, seeking to add language to it exempting from its coverage any and all work stoppages which might occur in situations covered by Section 10.2 of the collective bargaining agreement. Before the motion could be heard, the unit chairman of Local 151 decided on the basis of information he had heard concerning the movement of work from Connersville to Richmond to establish a picket line at D & M's Richmond facility. On October 5, 1978, members of Local 151 established a picket line at the entrances to D & M Richmond, and told employees at Richmond that Connersville work had been transferred to Richmond and additional employees had been hired to perform the work. All of the employees of D & M Richmond honored the picket line.
 
 
 13
 On October 6, 1978, D & M petitioned the district court to find Local 2042 and its striking members in contempt of the September 8 preliminary injunction because its members honored the Local 151 picket line. At the conclusion of a hearing, the district court held that Local 2042's sympathy strike was proscribed by the terms of the September 8 preliminary injunction. Consequently, the district court refused to modify the injunction to permit Local 2042 to honor Local 151's picket line at D & M Richmond, and found Local 2042 and the named individuals in contempt.
 
 
 14
 In Boys Markets v. Clerks Union, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970), the Supreme Court carved out a narrow exception to the broad statutory prohibition which prevents a federal court from enjoining strikes in a labor dispute. Concluding that the prohibition contained in § 4 of the Norris-LaGuardia Act, 29 U.S.C. § 104, must be accommodated to the subsequently enacted provisions of § 301(a) of the Labor Management Relations Act and the purposes of arbitration, the Court held that a strike was enjoinable where the collective bargaining agreement between the disputants contained a provision for the mandatory submission of a grievance to arbitration, and where the union's violation of a no-strike clause resulted in the type of harm to the employer which gives rise to equitable relief. The Court described its holding as "narrow." Id., at 253, 90 S.Ct. 1583.
 
 
 15
 The question of whether a sympathy strike was enjoinable pending arbitration of the issue of whether the strike itself violated a no-strike clause was addressed by the Court in Buffalo Forge v. Steelworkers, supra. Finding that the rationale of the Boys Markets exception had no application in the sympathy strike context, the Court held that where the only issue was whether a sympathy strike violated a no-strike clause, a sympathy strike alleged to be in violation of a no-strike clause in a collective bargaining agreement was not enjoinable. Our decision in Ziegler Coal Co. v. Local Union No. 1870, 566 F.2d 582, 584 (7th Cir. 1977), aptly describes the effect of Buffalo Forge:
 
 
 16
 "We think it clear . . . that Buffalo Forge proscribes issuance of a Boys Markets injunction against a sympathy strike alleged to be in violation of an express or implied no-strike agreement pending arbitration of the parties' dispute over the legality of the strike. Buffalo Forge teaches that where a strike is not "over" any underlying dispute between the parties subject to arbitration but rather is itself the very subject of the parties' dispute, issuance of an injunction against the strike would constitute an unwarranted judicial intrusion into the merits of the controversy."
 
 
 17
 We find this case to be directly controlled by Buffalo Forge. As in Buffalo Forge, the only question in this case is whether Local 2042's sympathy strike violated § 10.2 of the collective bargaining agreement, which purports to limit the circumstances in which Local 2042 could engage in a sympathy strike. That issue, in turn, rests on a consideration of whether work was moved from either of D & M's lawfully struck Connersville plants to its Richmond plant which made necessary the hiring of new employees. Distinguishing Buffalo Forge, the district court found that the question of whether or not work had been moved from Connersville to Richmond was an arbitrable dispute, and concluded that Local 2042's sympathy strike should be enjoined pending arbitration of that dispute. We cannot distinguish Buffalo Forge and consequently disagree with the district court's conclusion.
 
 
 18
 In support of the district court's finding and conclusion, D & M argues that § 10.2 of the collective bargaining agreement was expressly designed to apply to the sympathy strike in this case, that the underlying dispute which the sympathy strike is "over" is a matter subject to arbitration under the agreement, and that the district court properly refused to modify its previous injunction. This argument is viable only if Buffalo Forge is distinguishable.
 
 
 19
 As previously stated, the only question raised by Local 2042's sympathy strike is whether that strike was in violation of § 10.2 of the collective bargaining agreement, and that question involved the further inquiry of whether the exception contained in § 10.2 for the movement of struck work from Connersville to Richmond applied. Whether work was moved from Connersville to Richmond is a consideration which has no significance independent of § 10.2, for nothing in the collective bargaining agreement prevents the movement of such work between plant locations. The movement of work from lawfully struck Connersville to Richmond is a relevant consideration only in the context of whether § 10.2 is applicable. Hence, the legality of the sympathy strike itself under § 10.2 was the very subject of the parties' dispute, and Buffalo Forge teaches that in such circumstances the district court may not enjoin a sympathy strike pending arbitration.
 
 
 20
 Accordingly, the order appealed from is reversed.
 
 
 21
 REVERSED.
 
 
 
 *
 Senior District Judge William J. Campbell of the Northern District of Illinois is sitting by designation