SKOKIE VALLEY BEVERAGE COMPANY, a corporation, Plaintiff,

v.

BEER, SOFT DRINKS, WATER, FRUIT JUICE, CARBONIC GAS, LIQUOR SALES DRIVERS, HELPERS, INSIDE WORKERS, BOTTLERS, WAREHOUSEMEN, SCHOOL, SIGHTSEEING, CHARTER BUS DRIVERS, GENERAL PROMOTIONAL EMPLOYEES OF AFFILIATED INDUSTRIES, LOCAL UNION NO. 744, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Defendant.

No. 83 C 2591.

United States District Court,
N.D. Illinois, E.D.

April 19, 1983.

William R. Carney, Michael J. Halloran, Michael A. Forti, Bell, Boyd & Lloyd, Chicago, Ill., for plaintiff.

Marvin Gittler, Edwin H. Benn, Asher, Goodstein, Pavalon, Gittler, Greenfield & Segall, Ltd., Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

GETZENDANNER, District Judge:

This action is before the court on the motion of plaintiff Skokie Valley for a preliminary injunction. Jurisdiction is based on 29 U.S.C. § 185(a). The court decides Skokie Valley's motion on the basis of the parties' briefs and after review of cases cited by the parties. The essential facts are not in dispute, and the court relies on statements of the facts in the parties' briefs. For the following reasons, the court denies Skokie Valley's motion.

### I

Skokie Valley is a beverage distributor, employing members of the defendant Union pursuant to a collective bargaining agreement. Article 47, § 1 of that agreement sets out a procedure for resolving disputes between the parties, including referral of disputes to impartial arbitrators. Article 47, § 1, step 2 provides that the arbitrator's findings shall be final and conclusive, and that no strike or lockout shall occur pending a final determination, except as otherwise provided. Article 47, § 1, step 3 allows the Union to strike on 10 days' notice if Skokie Valley fails to pay wages.

The present controversy began in December 1981, when Skokie Valley discharged its employee Robert Warger, a member of the Union. Grievance procedures apparently were followed, and the matter eventually was referred to Arbitrator Peter M. Kelliher. On March 15, 1983 Kelliher rendered a decision, concluding that Skokie Valley had violated the collective bargaining agreement by discharging Warger. Kelliher directed Skokie Valley "to reinstate the grievant and make him whole for all monies and benefits lost as a result of his discharge."

On March 21 Skokie Valley conditionally reinstated Warger pending judicial review of Kelliher's decision, but it did not pay him any lost compensation, taking the position that it had no obligation to do so until Warger reduced Kelliher's award to judgment in a judicial proceeding. On April 7 or 8 the Union notified Skokie Valley that it considered its withholding of Warger's back pay to be a failure to pay wages, entitling the Union to strike after 10 days under Article 47, § 1, step 3.

On April 15 Skokie Valley presented a grievance, raising issues of contract interpretation regarding the finality of an arbitrator's decision, the applicability of step 3 to its failure to pay Warger his lost compensation, and the permissibility, under the Agreement, of the threatened strike. Also on April 15 Skokie Valley filed the present lawsuit, asking the court to vacate Kelli-

her's decision and to restrain or enjoin the threatened strike. That same day Skokie Valley moved for a temporary restraining order. The parties filed memoranda and made brief oral presentations, and the court denied Skokie Valley's motion. On April 18 Skokie Valley filed the present motion for a preliminary injunction against the threatened strike.

## II

■ The competing goals of 29 U.S.C. § 104 and 29 U.S.C. § 185(a) have been balanced in *Boys Markets, Inc. v. Retail Clerks Union*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970), and *Buffalo Forge Co. v. United Steel Workers*, 428 U.S. 397, 96 S.Ct. 3141, 49 L.Ed.2d 1022 (1976). *See also Jacksonville Bulk Terminals, Inc. v. International Longshoremen's Ass'n*, —— U.S. ——, 102 S.Ct. 2673, 73 L.Ed.2d 327 (1982); *Gateway Coal Co. v. Mine Workers*, 414 U.S. 368, 94 S.Ct. 629, 38 L.Ed.2d 583 (1974). When a union has agreed to arbitrate disputes instead of striking, then federal courts can enjoin the union from striking pending arbitration of the dispute underlying the strike. Such an injunction is proper, as it issues in aid of arbitration. *Boys Markets*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199. When the arbitrable issue is the permissibility of the strike itself, rather than some other underlying issue, then an injunction should not issue. In such a case the strike does not constitute an evasion of an agreement to arbitrate disputes; further, issuance of an injunction could interfere with subsequent arbitration of the permissibility of the strike, as the court's ruling might overshadow or prejudge the arbitrator's decision. *Buffalo Forge*, 428 U.S. 397, 96 S.Ct. 3141, 49 L.Ed.2d 1022. *See also Design & Manufacturing Corp. v. UAW*, 608 F.2d 767 (7th Cir.1979), *cert. denied*, 446 U.S. 938, 100 S.Ct. 2158, 64 L.Ed.2d 791 (1980); *Zeigler Coal Co. v. Local No. 1870*, 566 F.2d 582 (7th Cir.1977), *cert. denied*, 436 U.S. 912, 98 S.Ct. 2253, 56 L.Ed.2d 413 (1978).

Skokie Valley offers two justifications for issuance of an injunction in this case.

First, Skokie Valley argues that the issues grieved on April 15 are arbitrable disputes pending resolution of which the Union has agreed not to strike. These issues include the finality of the arbitrator's decision, the applicability of step 3 to the lost compensation award, and the permissibility of the threatened strike. Second, Skokie Valley argues that arbitration of the initial dispute, Warger's discharge, is still pending, since the arbitration process includes judicial review of the arbitrator's decision; until a final determination by judicial review, Skokie Valley argues, the Union is bound contractually not to strike.

■ Skokie Valley's first argument, taken by itself, is insufficient. Skokie Valley identifies issues grieved on April 15 and seeks to enjoin the threatened strike pending arbitration of these grievances; however, the court believes, contrary to Skokie Valley's position, that these grievances all, in different forms, question the permissibility of the threatened strike, rather than raising any arbitrable dispute underlying the threatened strike. For instance, the question of the finality of the arbitrator's decision does not underlie the threatened strike; it really is just one way of asking whether the threatened strike violates the no-strike agreement, since the Union has agreed not to strike only until there is a final determination. The Court of Appeals for the Second Circuit has stated succinctly: "[T]he mere arbitrability of the issue of whether a strike or work stoppage violates an express or implied no-strike clause does not entitle the employer to 'Boys Markets' injunctive relief; there must be an underlying arbitrable grievance." *Elevator Manufacturers' Ass'n v. Local 1*, 689 F.2d 382, 385 (2d Cir.1982). *See also Buffalo Forge*, 428 U.S. 397, 96 S.Ct. 3141, 49 L.Ed.2d 1022. As no other underlying dispute has been suggested, the success of Skokie Valley's first argument depends on the success of its second argument. It must appear that the dispute over Warger's discharge still can be considered an arbitrable dispute pending resolution of which the Union has agreed not to strike; or, stated differently, it must

appear that Kelliher's decision was not a "final determination" for purposes of Article 47, § 1, step 2.

Since this threshold question is a difficult one of interpreting the language of the collective bargaining agreement, and since Skokie Valley already has referred it to the grievance and arbitration process, it might be held that the court should not issue an injunction, since in doing so it would overshadow and prejudge an arbitrator's resolution of the question. *Waller Brothers Stone Co. v. United Steelworkers,* 620 F.2d 132 (6th Cir.1980). (Additionally, the existence of an arbitrable dispute over step 3 might preclude a decision by this court under *Waller Brothers.*) On the other hand, *Elevator Manufacturers' Ass'n* holds that courts should approach these threshold questions. 689 F.2d at 386. It is not clear whether serious questions of interpretation were present in *Matson Plastering Co. v. Operative Plasterers,* 633 F.2d 1307 (9th Cir.1980), *cert. denied,* 454 U.S. 816, 102 S.Ct. 94, 70 L.Ed.2d 85 (1981), or in *Eaton Corp. v. Machinists and Aerospace Workers,* 580 F.2d 254 (7th Cir.1978). Because the law is not clear in this area, the court will not follow *Waller Brothers;* instead it will approach the necessary threshold question of whether arbitration over Warger's discharge, pending final determination of which the Union has agreed not to strike, has reached a final determination.

### III

Skokie Valley has touched on, but not actually advanced, one possible argument against the finality of the arbitrator's decision. Counsel for Skokie Valley noted in court that the arbitrator's award of lost compensation was unliquidated, and he referred to the difficulty of complying with an unliquidated award. Skokie Valley has not raised this point in its briefs in connection with the finality of the arbitrator's decision. More importantly, Skokie Valley has not indicated that there is any substantial dispute over the liquidated amount of this award.

Skokie Valley has cited a case which holds, quite explicitly, that for *Boys Markets* purposes the arbitration process includes judicial review; a strike may be enjoined under *Boys Markets* until judicial review has been had. *Sea-Land Service v. Longshoremen's Ass'n,* 625 F.2d 38, 41–42 (5th Cir.1980). *Sea-Land* relies on *Anheuser-Busch, Inc. v. Local 133,* 477 F.Supp. 742, 747 (E.D.Mo.1979), and on statutes and other cases less directly on point. The court is not persuaded by these cases. The language quoted from *Anheuser-Busch* is taken from this passage:

> The Union has the option, which it recognizes, to institute an action under 29 U.S.C. § 185 to enforce the Seidman award. . . . To allow the Union to ignore its peaceful option while it seeks to enforce the award in the streets would in fact render the valuable arbitration process largely nugatory. A request for judicial enforcement may be viewed as the final step in the arbitration process.

*Id.* at 747. The court believes that this passage forgets that unions legally are entitled to enforce their rights by striking. Only to the extent they have contracted away their right to strike over disputes may they be enjoined from doing so. The contours of an agreement not to strike must be determined as a matter of contract interpretation. Reference to enforcing the arbitrator's award "in the streets," as opposed to exercise of the union's "peaceful option," may beg the question of whether the Union's agreement not to strike ends with the arbitrator's rendering of a decision. Further, it is questionable whether the arbitration process is rendered "largely nugatory" if parties are hindered in their efforts to overturn arbitrators' decisions.

*Sea-Land* itself relies heavily on the availability of judicial enforcement and review for its position that judicial enforcement is part of the arbitration process, and that *Boys Markets* injunctions therefore may continue through post-arbitration judicial proceedings. The Court of Appeals concludes that an agreement not to strike will end with an arbitrator's decision only if the collective bargaining agreement ex-

pressly so provides, or if the agreement expressly precludes judicial review or enforcement; the Court thus distinguishes *New York v. Local 144,* 410 F.Supp. 225, 230 (S.D.N.Y.1976), in which the court refused to enjoin a strike after an arbitrator's decision in favor of the union.

This court turns to the language of Article 47, § 1, step 2, to construe the terms of the agreement. Step 2 provides that findings of the Joint Grievance Committee or of an arbitrator "shall be final and conclusive and [that] no strike or lockout shall occur pending a final determination except as hereinafter provided." Step 3 allows the Union to strike on 10 days' notice should Skokie Valley fail to pay wages. No explicit mention is made of judicial review or enforcement. It is provided that "[n]othing herein contained shall authorize the arbitrator to alter the terms and conditions of this Agreement or make a new Agreement"; this language arguably prescribes a standard for judicial review, but more plausibly this language merely limits the arbitrator's power to remedy a breach by altering the agreement.

The court is not convinced that there has been no "final determination" until an opportunity for judicial review has been had. Article 47 sets out procedures for resolving disputes, and the Union agrees not to strike during the pendency of those procedures. Skokie Valley's right to limited judicial review is not created by the terms of the agreement, and it does not depend on explicit mention of that right in the agreement. This does not mean, however, that the Union's agreement not to strike should be read as extending to the pendency of procedures not prescribed by the agreement and mentioned nowhere therein. The Court in *Sea-Land* held that a no-strike agreement would extend to judicial enforcement in the absence of an express agreement otherwise, but this court is not convinced that that presumption is proper. Agreements not to strike pending arbitration may sometimes be inferred from the presence of arbitration procedures in a collective bargaining agreement. *See Buffalo Forge,* 428 U.S. at 407, 96 S.Ct. at 3147. The court is

not convinced, though, that it should presume an agreement not to strike pending judicial review, a procedure not mentioned in the agreement.

It should be remembered that *Boys Markets* overcame the facially absolute prohibitions of 29 U.S.C. § 104 by reasoning that 29 U.S.C. § 185(a), which calls for enforcement of labor agreements by federal courts, allowed courts to require specific performance of union agreements not to strike. The underpinnings of *Boys Markets* do not seem to favor free inference of no-strike agreements beyond what fairly can be found within the language of the collective bargaining agreement. The court in *Boys Markets* also relied on a general policy of encouraging arbitration of labor disputes. The court doubts that this policy supports free inference of union agreements not to strike during the pendency of proceedings intended to overturn an arbitrator's award.

The court recognizes that some argument can be made to the effect that enjoining strikes pending judicial review does encourage arbitration. It may be that employers are hesitant to commit adjudication of their legal rights to arbitrators, and that this concern would be soothed by knowledge that they could obtain unpressured judicial review of serious arbitral errors. The very limited nature of judicial review of arbitrators' decisions suggests that encouraging judicial review probably does not encourage broad use of arbitration, which usually is thought to offer speedier resolution of disputes than courts can offer. In any event, parties easily can contract as they wish on this point. In each case, as here, the court must refer to the agreement in question.

Skokie Valley argues that its lawful right to seek judicial review will be frustrated if the Union is allowed to coerce compliance by striking. Of course, striking also is a lawful right, unless that right has been contracted away. Employers can ensure that they will have unharried recourse to judicial review by bargaining for an agreement not to strike pending such review. The present agreement makes no

mention whatever of judicial enforcement or review. As stated above, while there always is some room for reading between the lines of a contract, the court will not presume, absent some basis in the language of the agreement, that the no-strike agreement extends to the pendency of procedures not mentioned in the agreement.

Skokie Valley bears a heavy burden in moving for a preliminary injunction. On this motion, at least, Skokie Valley has not convinced the court that its interpretation of the agreement is correct. Skokie Valley's entire argument necessarily hinges on the argument that the Warger dispute continues to be arbitrable, in the sense that another stage of the arbitration process, judicial review, remains to be completed. The court has not been convinced that this is so.

Additionally, the court notes that Skokie Valley would have great difficulty proving that it would be irreparably harmed by the court's failure to issue an injunction. It appears that Skokie Valley need only make monetary payments to Warger to forestall the threatened strike. Skokie Valley's argument for equitable relief is based on the possibility that Warger will dissipate the money and become judgment-proof before Skokie Valley could recover the payment, should it ultimately prevail; Skokie Valley also refers to the weakened bargaining position it will hold once the disputed payment has been made. Skokie Valley informs the court that the payment would be "in excess of $60,000." Given all the circumstances of the case, the court cannot say that the equities would favor granting Skokie Valley the injunction it seeks.

Therefore, Skokie Valley's motion for a preliminary injunction is denied. It is so ordered.