**COMPLETE AUTO TRANSIT, INC., Plaintiff,**

v.

**CHAUFFEURS, TEAMSTERS and HELPERS LOCAL UNION NO. 414, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, a labor organization, Defendant.**

No. 1:93–cv–302.

United States District Court, N.D. Indiana, Fort Wayne Division.

Dec. 17, 1993.

**1340**

Mark A. Garvin, Barnes and Thornburg, Fort Wayne, IN, R. Ian Hunter, Robert L. Mercado, Patricia M. Morrow, Dean and Fulkerson, Troy, MI, for plaintiff.

Joseph Christoff, Sr., Partner, Christoff and Christoff, Fort Wayne, IN, Edward J. Fillenwarth, Jr., Fred O. Towe, Indianapolis, IN, for defendant.

### ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on plaintiff's, Complete Auto Transit, Inc. (hereinafter: Complete), Motion for Preliminary Injunctive Relief that would prevent defendant, Chauffeurs, Teamsters and Helpers Local Union No. 414, International Brotherhood of Teamsters (hereinafter: the Union), from enforcing an arbitration award issued by a Board of Arbitration (hereinafter: the Board) on October 7, 1993, until this court makes a final determination as to the validity of the Award. Plaintiff has also filed a Complaint requesting this court to vacate the arbitration award. For the following reasons, Complete's Motion for Preliminary Injunction will be denied.

### Factual Background

The court decides Complete's motion on the basis of the parties' briefs, and after a careful review of the cases cited by the parties and those cases disclosed by the court's own research. The essential facts are not in dispute, and the court relies upon the facts as revealed in the Affidavit of Ronald R. Borges, Vice President of Labor Relations for Complete and Complete's Verified Motion for Temporary Restraining Order, Preliminary Injunction Staying Enforcement of Arbitration Award and for Order to Appear and Show Cause.

Complete is a Michigan corporation with its principal office and place of business located in Troy, Michigan. Complete is a major automobile carrier engaged in the transportation of new automobiles to dealers across the country. Complete operates a terminal facility in Roanoke, Indiana.

The Union is the exclusive bargaining representative for Complete's garage employees at Complete's Roanoke, Indiana, terminal facility. Complete and the Union are parties to a collective bargaining agreement which includes the National Master Automobile Transporters Agreement and the Central and Southern Conference Area Supplemental Agreements (collectively, the Collective Bargaining Agreement).

Complete opened its Roanoke, Indiana, facility in January 1987. From August 1987, to June 1991, Complete's garage employees worked in two shifts at the Roanoke facility. On June 17, 1991, Complete added a third shift to its garage at the Roanoke facility commencing at 11:30 p.m. on Monday and ending at 8:00 a.m. the following Saturday. On June 18, 1991, the Union filed a class grievance on behalf of the garage employees/mechanics protesting the third shift on the grounds that Complete had instituted a Tuesday through Saturday work week in violation of Article 72, Section 1 of the Collective Bargaining Agreement.

The grievance was processed through all stages of the grievance and arbitration procedures set forth in Article 7 of the Collective Bargaining Agreement and when the grievance was deadlocked by the National Joint Arbitration Committee, it was referred for determination to the Board in conformance with Article 7, Section 9 of the Collective Bargaining Agreement.

On or about November 15, 1993, the Board issued its Report and Decision and Award. The Board found the grievance meritorious and allowed the grievance. Specifically, the Board found that Complete had instituted a Tuesday through Saturday work-week in violation of the Collective Bargaining Agreement. The Board awarded the grieving employees seven and one-half hours at straight time pay for every week each employee worked under the grieved schedule and the difference between time and one-half and

straight time for all hours worked on Saturday under the schedule.

Complete instituted the present action by filing its Civil Complaint to Vacate Arbitration Award and for Injunctive Relief on November 19, 1993. Complete also filed a Verified Motion for Temporary Restraining Order, Preliminary Injunction Staying Enforcement of Arbitration Award and for Order to Appear and Show Cause on November 29, 1993. In essence, Complete asks this court to issue a preliminary injunction prohibiting the Union from enforcing the arbitration award until the court has reviewed the award and renders a decision either upholding or vacating the award. On December 2, 1993, at the conclusion of a telephone conference where both parties were represented by counsel, this court denied Complete's Motion for a Temporary Restraining Order and ordered both parties to brief the issue of whether this court should issue a preliminary injunction. The issue has been fully briefed and is now ripe for decision.

### Jurisdiction

■ The court has jurisdiction over this matter by virtue of Section 301 of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 185, and by 28 U.S.C. § 1337. 28 U.S.C. § 1337 states, "The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies." *Id.* It has been held that an action commenced pursuant to 29 U.S.C. § 185 relating to suits by and against labor organizations invokes the original jurisdiction of 28 U.S.C. § 1337. *See, Avco Corp. v. Aero Lodge No. 735, Intern. Ass'n of Machinists and Aerospace Workers,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968); *See also, Textile Workers Union of America v. Lincoln Mills of Alabama,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957); *LaBuhn v. Bulkmatic Transport Co.,* 865 F.2d 119 (7th Cir.1988). Moreover, where a party motions a district court to vacate an arbitration award the district court has subject-matter jurisdiction. *Davis v. Ohio Barge Line, Inc.,* 697 F.2d 549 (3rd Cir.1983).

### Preliminary Injunctive Relief

Section 4 of the Norris–LaGuardia Act, 29 U.S.C. § 104, denies federal courts jurisdiction to issue injunctions against various concerted activities "in any case involving or growing out of any labor dispute." *San Fran. Elec. Cont. Ass'n v. International Bhd. of Elec. Workers No. 6,* 577 F.2d 529, 531 (9th Cir.), *cert. denied,* 439 U.S. 966, 99 S.Ct. 455, 58 L.Ed.2d 425 (1978). Section 301 of the Taft–Hartley Act, 29 U.S.C. § 185, confers jurisdiction upon federal district courts over suits for violation of contract between an employer and a bargaining representative of its employees. *Id.* at 532.

The competing goals of the Norris–LaGuardia Act and the Taft–Hartley Act have been balanced in *Boys Markets, Inc. v. Retail Clerks Union,* 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970), and *Buffalo Forge Co. v. United Steel Workers,* 428 U.S. 397, 96 S.Ct. 3141, 49 L.Ed.2d 1022 (1976). In *Boys Markets* the Supreme Court held that where a union has agreed to arbitrate disputes instead of striking, federal courts can enjoin the union from striking pending arbitration of the dispute underlying the strike. Such an injunction is proper as it is issued in furtherance of arbitration. *Boys Markets,* 398 U.S. 235, 90 S.Ct. 1583. In 1976 the Supreme Court narrowed the Boys's Markets exception in *Buffalo Forge.* In *Buffalo Forge,* the court ruled that when the arbitrable issue is the permissibility of the strike itself, rather than some underlying issue, then an injunction should not issue. In such a case the strike does not constitute an evasion of an agreement to arbitrate disputes. *Buffalo Forge,* 428 U.S. 397, 96 S.Ct. 3141.

■ The driving force underlying the decisions in *Boys Markets* and *Buffalo Forge* that allows a court to issue injunctions under limited circumstances rests with the well-established proposition that public policy strongly favors judicial action to "effectuate[ ] . . . the means chosen by the parties for settlement of their differences under a collective bargaining agreement . . ." *Boston Celtics Ltd. Partnership v. Shaw,* 908 F.2d 1041 (1st Cir.1990) (quoting *United Steel-*

workers v. American Mfg. Co., 363 U.S. 564, 566, 80 S.Ct. 1343, 1345, 4 L.Ed.2d 1403 (1960)). See also, United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). Thus, there is a strong public policy that favors arbitration, which is the usual method employers and employees' representatives utilize to settle differences that arise under a collective bargaining agreement.

Following the same public policy of promoting arbitration to decide labor disputes, the Supreme Court has recognized that an arbitrator's decision that a strike was in violation of a contract and his order to cease and desist were subject to judicial enforcement by injunction. Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). Furthermore, it has been recognized that a court may issue an injunction against employer breaches of collective bargaining agreements to maintain the status quo pending arbitration. Local Lodge No. 1266, Etc. v. Panoramic Corp., 668 F.2d 276 (7th Cir.1981). Moreover, it has been held that a court may issue a preliminary injunction not only to enjoin a strike in violation of a contract, but also to enforce an arbitrator's award. Boston Celtics Ltd. Partnership v. Shaw, 908 F.2d 1041 (1st Cir.1990); New Orleans Steamship Ass'n v. General Longshore Workers Local 1418, 626 F.2d 455, 466 (5th Cir.1980), aff'd sub nom. Jacksonville Bulk Terminals, Inc. v. International Longshoremen's Ass'n, 457 U.S. 702, 102 S.Ct. 2672, 73 L.Ed.2d 327 (1982); San Fran Elec. Cont. Ass'n v. International. Bhd. of Elec. Workers No. 6, 577 F.2d 529 (9th Cir.), cert. denied, 439 U.S. 966, 99 S.Ct. 455, 58 L.Ed.2d 425 (1978).

◼ In the present action, Complete is neither requesting a Boys Markets injunction prohibiting the Union from striking pending

arbitration of an arbitrable issue, nor is it requesting a Boston Celtics injunction to enforce the arbitrator's award. Complete is also not requesting a Panoramic injunction to maintain the status quo pending arbitration of an arbitrable issue. To the contrary, Complete is requesting this court to issue an injunction in order to restrain the Union from enforcing the arbitrator's award.

Complete concedes had it "requested injunctive relief alleging a threatened strike under Boys Markets, defendant is correct in asserting that such injunctive relief would be inappropriate under Buffalo Forge," (Plaintiff's Memorandum in Reply to Defendant's Memorandum in Opposition to Request for Injunctive Relief, p. 4). However, Complete argues that because it is asking for an injunction prohibiting the Union from enforcing the Board's award pending the decision of this court as to the validity of the award, and not for an injunction enjoining a threatened strike, the present case does not fall under a Boys Markets analysis and the court may issue an injunction under its inherent equitable powers. Complete has failed to cite any authority, and this court has failed to discover any, that this court has the power to issue such an injunction against the express provisions of the Norris–LaGuardia Act prohibiting a court from exercising its equitable power in a labor dispute.[1]

Complete is misconstruing the balance to be given in deference to the Norris–LaGuardia Act when a court is asked to issue an injunction restraining either party to a labor dispute. Complete fails to appreciate that Boys Markets and Buffalo Forge are exceptions to the general rule that a court has no jurisdiction to issue injunctions in a labor dispute. What Complete requests of this court is to forge a new exception to the general rule. In essence, Complete asks this court to grant a stay of execution pending appeal of the Board's award. Had Congress concluded that a federal district court should

1. Complete cites Wooleyhan Transp. Co. v. Highway Truck D. & H. Local No. 107, 249 F.Supp. 95 (E.D.Pa.1965), for authority that a federal district court has jurisdiction to issue a preliminary injunction prohibiting a union from enforcing an arbitration award pending review of the award by the court. However, the court finds this five paragraph opinion to hold that the district court should not issue such an injunction, but to swiftly decide the employer's request to vacate the arbitrator's award.

have jurisdiction to issue such an injunction in a labor dispute, Congress could have made its intention explicit. However, Congress has remained silent on the matter. Therefore, the court must rule in accordance with the explicit provisions of the Norris–LaGuardia Act prohibiting courts from issuing injunctions to parties to a labor dispute.

In conjunction with the analysis *supra*, the Union asserts that Complete is contractually barred from limiting the Union's right to enforce the Board's award because the Collective Bargaining Agreement specifically exempts the no-strike clause to recourse taken by the Union to enforce an award, and because the contract also gives the non-breaching party the right to all legal and economic recourse. The Union cites Article 7, Section 10, of the Collective Bargaining Agreement in support of its position:

> Failure of either party involved in a grievance or dispute to comply with a final decision of a panel of any Joint Arbitration Committee or a Board of Arbitration established under this Article within ten (10) working days of the date of the decision shall give the other party the immediate right to all legal and economic recourse in support of such decision. The provisions of Article 7, Section 1, first and second paragraphs and the provisions of Article 7, Section 13 shall not apply to recourse taken by any party under the terms of this section.

The Union argues that under this section, if Complete does not abide by the Board's decision, the Union has the right to take all legal and economic recourse after ten (10) days, and the court has no authority to enter any sort of injunctive relief against the Union where the parties have not agreed to submit the issue to arbitration. *Boys Markets*, 398 U.S. 235, 90 S.Ct. 1583.

Article 7, Section 10, states that Article 7, Section 1, paragraphs one and two shall not apply to recourse taken by any party under the terms of Section 10. Section 1 is the no-strike clause which states:

> The parties agree that all grievances and questions of interpretation arising from the provisions of this Agreement Shall be submitted to the grievance procedure for de-

termination. The Unions and the Employers agree that there shall be no strike, tie-up or equipment, slowdown or walkout on the part of the employees, nor shall the Employer use any method of lockout or legal proceeding without first using all possible means of a settlement, as provided for in this Agreement, of any controversy which might arise.

Article 7, Section 13, is the other section made inapplicable to recourse taken by any party when the other party fails to abide by the decision of the Board. Section 13 states:

> Unless otherwise expressly provided in this Agreement, any and all disputes, including interpretations of contract provisions arising under, out of, in connection with, or in relation to this collective bargaining agreement, shall be subject to the grievance procedure of this agreement.

Finally, the court takes notice of Article 7, Section 9, Paragraph (e) which states:

> The findings and decision of a majority of the Board of Arbitration shall be final and binding on the parties and the employees involved.

Complete argues that the contract does not preclude it from seeking injunctive relief, nor does the contract prohibit the issuance of injunctive relief under these circumstances. Complete asserts that Section 10 only applies to final determinations of a joint arbitration committee or a board of arbitration. Complete maintains that once either party seeks judicial review of the Board's decision and award, the decision and award are no longer final until the court passes on the validity of the decision and award. *Sea–Land Service v. Longshoremen's Ass'n*, 625 F.2d 38 (5th Cir.1980).

*Sea–Land Service,* held that for *Boys Markets* purposes the arbitration process includes judicial review. That is, a strike may be enjoined under *Boys Markets* until judicial review has been had. *Sea–Land*, 625 F.2d at 41–42. The court held that "a request for judicial enforcement may be viewed as the final step in the arbitration process." *Id.* In *Sea–Land*, the collective bargaining agreement had no provision entitling the union to strike once the arbitrator's decision

had been rendered. *Sea–Land* concluded that a bargained for agreement not to strike will end with an arbitrator's decision only if the collective bargaining agreement expressly so provides. *Sea–Land*, 625 F.2d at 42.

In *Sea–Land*, the Fifth Circuit relied upon language in *Anheuser–Busch, Inc. v. Local 133*, 477 F.Supp. 742, 747 (E.D.Mo.1979). *Anheuser–Busch* reasoned that it was inappropriate to allow a union to ignore its peaceful option of seeking judicial review to enforce an arbitrator's award and instead permit it to apply economic pressure "in the streets." *Id.* at 747. *Anheuser–Busch* held that the injunction would be issued because it was in aid of arbitration. Otherwise the economic pressure instituted by the union would "render the valuable arbitration process largely nugatory." *Id.* Thus, both *Sea–Land* and *Anheuser–Busch* show a definite preference for judicial action when a union decides to utilize economic recourse to enforce an arbitration award.

The court is not persuaded by *Sea–Land* or *Anheuser–Busch*. The court finds persuasive *Skokie Valley Beverage Co. v. Beer, Soft Drinks, Water, Etc.*, 563 F.Supp. 460 (N.D.Ill.1983). *Skokie Valley* analyzed the holding of *Sea–Land* and *Anheuser–Busch* and declined to follow their rulings. Instead, *Skokie Valley* held that unions are legally entitled to enforce their rights by striking, and "only to the extent they have contracted away their right to strike over disputes may they be enjoined from doing so." *Skokie Valley*, 563 F.Supp. at 463. Unlike *Sea–Land* and *Anheuser–Busch*, *Skokie Valley* did not attempt to state which recourse, either economic or legal, was to be utilized by a Union where the collective bargaining agreement was silent. *Skokie Valley* held that the court must look to the collective bargaining agreement in order to determine whether the union had contracted the right to strike away. *Id.*

In the present action, the court is not convinced that there has been no final determination until this court reviews the arbitrator's award. As in *Skokie Valley*, the court must look to the Collective Bargaining Agreement to determine whether there are provisions defining what is an arbitrator's

final determination that would permit the Union to strike once an a decision and award have been issued. Article 7, Section 10 provides that if either party fails to comply with a final decision, the other party shall have the right to all legal and economic recourse in support of such decision. Furthermore, the provisions of Article 7, Section 10, state explicitly that the no-strike clause is exempt and economic pressure may be instituted by the Union to enforce the Board's award. Moreover, Article 7, Section 9, Paragraph (e) states the findings and decision of a majority of the Board of Arbitration shall be final and binding on the parties and the employees involved.

Thus, the facts of the present case distinguish themselves from *Sea–Land* and *Anheuser–Busch*. The Collective Bargaining Agreement specifically contemplates what constitutes a final decision of the Board, and that once the Board's final decision is rendered, the Union may strike to enforce that decision. The court concludes that since it could not enjoin the Union from striking to enforce the Board's decision, *Boys Markets* would be undermined if the court could enjoin the Union from exercising other legal remedies to enforce a final decision of the Board.

Additionally, the court notes that Complete would have great difficulty proving that it would be irreparably harmed by the court's failure to issue an injunction. A party seeking an injunction must establish a right thereto in light of five factors: (1) no adequate remedy at law; (2) irreparable injury to the movant if the injunction is not issued; (3) the irreparable harm the requesting party may suffer if the preliminary injunction is not granted is greater than the irreparable harm the defendant will suffer if the injunction is granted; (4) reasonable likelihood of prevailing on the merits; and (5) that the issuance of an injunction is in the public interest. *Curtis v. Thompson*, 840 F.2d 1291, 1296 (7th Cir.1988). The trilogy of cases that give rise to the five factors are, *Lawson Products, Inc. v. Avnet, Inc.*, 782 F.2d 1429 (7th Cir.1986); *American Hospital Supply Corp. v. Hospital Products Limited*, 780 F.2d 589 (7th Cir.1986); *Roland Machin-*

*ery Co. v. Dresser Industries, Inc.,* 749 F.2d 380 (7th Cir.1984).

Complete states in its Verified Motion for Temporary Restraining Order, Preliminary Injunction Staying Enforcement of Arbitration Award and Order to Appear and Show Cause that it will suffer irreparable injury if the injunction is not issued, and that it has no adequate remedy at law. Complete asserts that if it is forced to pay large sums of money in the form of backpay awards, the money may not be recoverable if the award is later vacated, or that the money would be recoverable only by means of further legal proceedings at great inconvenience and additional cost. Complete also cites the resulting disruption of its business and its inability to service its customers if the Union takes economic action against Complete to enforce the award. Complete further states that if it is compelled to satisfy the award, once the monies are paid out an expectation of finality will be created on the part of the employees, which in the event the award is later vacated, would foster greater resentment and further impair the relationship between Complete and its employees.

The court does not find these factors to be irreparable injuries. The court is uncertain as to why Complete will be unable to recover the backpay awards if Complete must satisfy the Board's decision before this court rules on the award's validity. The amounts of the backpay awards are readily calculable. The total amount of the awards is only approximately $180,000.00. The individuals to whom the backpay awards are to be distributed are a small number of garage employees of Complete, and not long-haul truckers who may be hard to track down. Furthermore, Complete certainly maintains personnel records that would aid in recovery of the backpay awards from the eight or nine grieving employees. Finally, the fact that Complete may have to resort to further legal proceedings to recover an award from its employees is not irreparable injury that would entitle Complete to extraordinary relief.

Complete states that economic action taken by the Union to enforce the award could result in the disruption of Complete's business, loss of customers and business reputation. Complete does not define "economic action," but the court understands Complete to be referring to concerted activity such as a strike. The court has already held *supra* that an injunction to enjoin such concerted activities will not lie and will not elaborate further.

Finally, Complete asserts that if the award is paid out and the court then vacates the award, an expectation of finality will have already been created which will foster greater animosity between the employees and Complete when Complete attempts to recover the award. The court will not rely upon speculative, subjective feelings of grieving employees when deciding whether to issue extraordinary relief. Moreover, the underlying argument really raises the question whether the court has the authority to issue an injunction in a labor dispute that in reality is a stay of execution pending appeal. As discussed *supra,* had Congress intended such a result in a labor dispute it could have easily so provided. The court does not find the lack of such a remedy to be irreparable injury.

Complete also maintains that the irreparable harm it may suffer if the preliminary injunction is not granted is greater than the irreparable harm the Union will suffer if the injunction is granted. This part of the analysis is known as the "sliding scale" analysis where the possibility of mistake would be minimized by weighing the costs of injunctive relief against the benefits. This factor seems to weigh in Complete's favor when looking at the practicalities of the case. The harm that will befall the Union is a delay in receiving the backpay award. The harm Complete may incur if no injunction is issued is economic injury. However, as the court previously eluded to, Complete has failed to demonstrate any *irreparable* injury that would entitle it to extraordinary relief.

Complete strongly suggests that it will prevail on the merits. Complete states that the Board expressly refused to consider the only issue submitted to it, and based its decision and remedy on extraneous matter which were neither grieved nor properly before it for consideration. Therefore, Complete argues the decision of the Board did

not derive its essence form the Collective Bargaining Agreement as required and should not be enforced.

The argument that the decision of the Board was not derived from the essence of the agreement is questionable. The Board may not have determined what the shift start-time was, but it did decide the issue before it, that is, that Complete had instituted a Tuesday through Saturday work schedule in violation of the Collective Bargaining Agreement. However, instead of defining a "shift start-time" in order to determine whether the work week was Tuesday through Saturday, the Board decided the issue by looking at how Complete gave holiday time off to employees on the different shifts. The only question is whether the Board looked to the Collective Bargaining Agreement when it made its finding concerning the holiday days. At this time, neither party has adequately briefed this particular issue. Therefore, the court shall not speculate as to the likelihood of success on the merits, but at this time finds that either party may succeed on the merits.

Finally, Complete asserts that the issuance of an injunction to stop possible enforcement of the Award is in the public interest. Complete states that an injunction will promote industrial harmony during the court's deliberations and will permit the proceedings to go forward in an orderly fashion. Complete argues that its customers, and indirectly its employees, will benefit from the stability a stay will provide.

In the present action, there seems to be little public policy involved in the decision whether to issue an injunction. The public policies cited by Complete are self-serving in that the policies only relate to Complete and its business interests. The public interest seems to be lacking in this matter.

In conclusion, the court holds that it is without jurisdiction to issue an injunction where Complete seeks to enjoin the Union from enforcing the Board's award until the court rules on the award's validity. The court is without the authority to carve a new exception to *Boys Markets* and must follow the explicit provisions of the Norris–LaGuardia Act prohibiting a court from issuing injunctions in the context of labor disputes. The court further holds that pursuant to the terms of the Collective Bargaining Agreement, the Union is entitled to utilize all of its economic and legal recourse to enforce the Board's final decision. Finally, the court holds that Complete has failed to demonstrate any irreparable injury that would entitle it to extraordinary relief.

### Conclusion

For all of the foregoing reasons, plaintiff's Motion for Preliminary Injunctive Relief is hereby DENIED.